PEOPLE v. BROWN

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — ADJOURNMENT —
STATUTE.
    Claim of defendant charged with armed robbery that the magi-
        strate lost jurisdiction and the circuit court should have dis-
        missed charges against him because 30 days elapsed between
        his first appearance before the magistrate and the preliminary
        examination *held*, without merit, where the preliminary exam-
        ination was postponed for the purpose of retaining appointed
        counsel for defendant, allowing counsel to familiarize himself
        with the case before examination, and loss of jurisdiction by
        adjournment is specifically negated by statute (CL 1948,
        § 766.7; CLS 1961, § 750.529).

2. ROBBERY—ARMED ROBBERY—DANGEROUS WEAPON.
    Claim of defendant charged with armed robbery that the people
        failed to prove he was armed with a dangerous weapon *held*,
        without merit, where undisputed testimony sufficiently estab-
        lished that the defendant was armed with a dangerous weapon
        or article used or fashioned in a manner to lead the person
        assaulted to believe it to be a dangerous weapon (CLS 1961,
        § 750.529).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — DUE PROCESS — FAIR
TRIAL.
    Testimony of a prosecution witness in a trial for armed robbery
        that "two have already pled guilty" *held*, not to be a denial
        of defendant's right to due process and fair trial where the
        statement was volunteered by the witness and the jury could
        have easily accepted the fact that two persons pleaded guilty
        to the established crime and still have given fair considera-
        tion to defendant's alibi (CLS 1961, § 750.529).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 445–447.
[2] 46 Am Jur, Robbery §§ 50, 51.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 220–228, 234–240.

4. CRIMINAL LAW — POLYGRAPH — CONSTITUTIONAL LAW — DUE PROCESS — FAIR TRIAL.

> Statement by prosecution witness that "I set up a polygraph" *held*, not to have deprived defendant charged with armed robbery of due process and a fair trial, where the immediate context out of which the polygraph statement was taken does not indicate that the test was set up for the defendant, the word "polygraph" was used only once and was not mentioned thereafter in the jury's presence, no one told or offered to tell what the polygraph was or how it worked, and nothing indicated that any sort of test was offered, given or refused, or result obtained, or opinion formed and where defendant's counsel neither objected nor requested an instruction to disregard (CLS 1961, § 750.529).

Appeal from St. Clair, Stanley C. Schlee, J. Submitted Division 2 February 4, 1969, at Detroit. (Docket No. 5,337.) Decided August 27, 1969.

James Gordon Brown was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, and *Ronald J. Flanigan,* Chief Assistant Prosecuting Attorney, for the people.

*Myles H. Knowles,* for defendant on appeal.

Before: LESINSKI, C. J., and T. M. BURNS and KELLEY,* JJ.

KELLEY, J. At his jury trial for armed robbery,[1] defendant asserted an alibi as a defense. Appealing his conviction, he alleges four errors.

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] CLS 1961, § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

1. Defendant's rights were violated because his preliminary examination was held 30 days after his first appearance before the magistrate.

On February 1, 1967, defendant first appeared before the magistrate and requested counsel. The next day the court appointed counsel for him. Preliminary examination was held March 3. Defendant made no motion to have it held earlier. Arraignment took place in circuit court on April 11. Six weeks later defendant filed a motion to dismiss the proceedings. Solely because 30 days elapsed between his first appearance and the preliminary examination, he claims that the magistrate lost jurisdiction and the circuit court should have dismissed charges against him.

In opposition to defendant's motion, the examining magistrate filed an affidavit stating that he postponed the examination "for the purpose of obtaining appointed counsel for defendant and allowing him to familiarize himself with the case before examination". Defendant made no answer to this affidavit. It appears that defendant benefited from the delay he now attacks.

CL 1948, § 766.4 (Stat Ann 1954 Rev § 28.922), requires a magistrate to "set a day for examination not exceeding ten days" after an accused's appearance. CL 1948, § 766.7 (Stat Ann 1954 Rev § 28-.925), permits delay of an examination "for good cause", and specifically provides that "no action on the part of the magistrate in adjourning or continuing any case, shall cause said magistrate to lose jurisdiction of said case".

Not only did the magistrate have good cause for delay, but the statute specifically negates loss of jurisdiction by adjournment. If defendant desired an earlier examination he should have demanded it. *People* v. *Duncan* (1964), 373 Mich 650.

2. The people failed to prove that defendant was armed with a dangerous weapon.

The victim testified on direct examination:

"[H]e pulled out the knife and brought it up to my throat and said 'lay down on the floor'."

She also testified that she heard them cut the telephone wires with the knife before leaving, that it was a straight knife like a hunting knife but slim with a small handle on it.

Another eyewitness testified that a knife was placed at the victim's throat, and that both she and the victim did what they were told.

This undisputed testimony, believed by the jury, sufficiently established that the robber was "armed with a dangerous weapon, or  *  *  *  article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon".[2]

3. Defendant was denied due process and a fair trial because a prosecution witness testified "Two have already pled guilty".

On direct examination an investigating police officer *volunteered* the statement which the prosecutor in no way solicited:

"*Q.* And after you had talked to the girls, what was your impression, Mr. Jones?

"*A.* My first impression?

"*Q.* Yes.

"*A.* Well, contrary to the belief of some people, the State Police investigate a crime from two standpoints, one, was there a crime and, if so, who might the culprits be, or is this a false report. My first impression, I wasn't too impressed there had been a crime, at first. Later, I discovered there had been a crime and arrested four people. *Two have already pled guilty.*" (Emphasis supplied.)

---

[2] CLS 1961, § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

Saying "I am sure this must have been inadvertent or else he just wants to hang this man", defendant's counsel at that point moved for a mistrial on the ground that the last remark had prejudiced the jury.

The trial judge denied defendant's motion and indicated an intent to instruct the jury immediately to disregard the offensive remark. Defendant's counsel then expressed a preference that such an instruction be given "at the close of the case". The court assented.

On cross-examination of the same witness, defendant's counsel extensively elicited statements concerning the tracing and apprehension of three men, including defendant, and two women, as suspects. Subsequently one of the women testified that she and the other four persons planned and carried out the crime. On direct examination neither she nor the prosecuting attorney in any way brought out the fact that she had pled guilty to the same charge. However, on cross-examination defendant's attorney obtained an affirmative response to his question: "Did you plead guilty?" He likewise brought out at trial the fact that one of the men had also pleaded guilty.

After both sides had rested the trial judge and counsel discussed instructions. Defendant's counsel stated that he did not want any instruction to be given as to two persons having pled guilty, adding: "I had to do what I could to take the curse off it, so I myself went ahead on the Rogers [sic] having pled guilty and the girl having pled guilty".

Testimony of the victim and another eyewitness clearly established every element of the offense of armed robbery. Their testimony in this respect remained undisputed. Defendant and his several witnesses testified only concerning his alibi, which be-

came the prime issue for jury decision. Of the two who had pleaded guilty, one, a girl, testified to her own involvement, and the other, Rogers, was identified by the girl, by the victim and by an eyewitness. The jury could easily have accepted the fact that these two pleaded guilty to the established crime, and still have given fair consideration to defendant's alibi. The bare statement of the officer as to two having pled guilty, could have done as much to strengthen defendant's alibi as to weaken it.

4. An investigating officer's statement "I set up a polygraph" deprived defendant of due process and a fair trial.

Defendant's counsel neither objected nor requested an instruction to disregard.

Polygraph tests have been considered in several cases.

The Court in *People* v. *Welke* (1955), 342 Mich 164, 169, deemed it reversible error to allow testimony not only that the test was made but also that the man who gave the test concluded and informed the defendant he was lying.

Refusal to permit defendant to introduce results of a test he took was sustained in *People* v. *Davis* (1955), 343 Mich 348, 369–372.

In *People* v. *Frechette* (1968), 380 Mich 64, 67–73, the people presented, without objection, extensive testimony as to how a polygraph operated, the accuracy of many tests and that defendant had taken such a test. The expert was then asked if he had an opinion as to whether defendant had made a truthful or untruthful answer. He replied, "Yes, I have". Defense counsel's objection to the opinion of the expert was sustained. On appeal the court concluded that prejudicial error occurred not only in admitting this testimony but also in permitting

questioning as to whether the expert had an opinion, and then added:

"When the trial court ruled, it ruled only as to the opinion question and the results of appellant's tests. The court not only failed to tell the jury to disregard these two matters, but also failed to tell them to disregard the extensive testimony with regard to the polygraph."

The officer also testified that early in his investigation he doubted the story of robbery as related by the two young girls who had been tied up inside the house. Testimony showed five persons involved in the robbery, three men who entered the house and two women who waited outside. Only the defendant was being tried here. The officer's statement appeared during his detailed recitation of his investigation, which covered many pages of the trial transcript. The immediate context out of which the polygraph statement was taken does not even indicate that the test was set up for the defendant, but only "in relation to this complaint":

"*Q*. You have said you went to the Police Department in Sarnia. What did you do there in the first place?

"*A*. The first time?

"*Q*. Yes.

"*A*. The first time I told them I had warrants for three suspects.

"*Q*. For Mr. Brown?

"*A*. Yes, one being Mr. Brown.

"*Q*. What happened as a result of that?

"*A*. As a result of that, they were arrested by the Sarnia Police Department on February 1st.

"*Q*. And was Mr. Brown brought over to this country?

"*A*. Yes, subsequent to that, Mr. Brown and the other defendant signed waivers to come back to the United States.

"*Q.* Did you have anything to do with their signing the waivers?

"*A.* No.

"*Q.* Did you do anything further in relation to this complaint?

"*A.* I set up a polygraph.

"*Q.* Anything else?

"*A.* In regard to the defendant?

"*Q.* Yes.

"*A.* Well, there was a lineup conducted that I attended with the two victims."

Merely the word "polygraph" was used and only once. No one thereafter mentioned it in any way in the jury's presence. No one told or offered to tell what it was or how it worked. Nothing indicated that any sort of test was offered, given or refused, or result obtained, or opinion formed.

Consideration of the entire record impels us to conclude that no error has resulted in a miscarriage of justice[3] and that defendant had a fair and impartial trial.[4] We are satisfied beyond a reasonable doubt that the errors complained of did not contribute to defendant's conviction.[5]

Affirmed.

All concurred.

---

[3] CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).
[4] *People* v. *Pickett* (1954), 339 Mich 294.
[5] *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705).