PEOPLE *v.* JOSHUA

OPINION OF THE COURT

1. SEARCH AND SEIZURE—IMMUNITY FROM ILLEGAL SEARCH—NATURE OF IMMUNITY.

> The immunity from illegal searches and seizures is a personal privilege; no rights, constitutional or otherwise, are involved when property not under the defendant's control is searched.

2. SEARCHES AND SEIZURES—AUTOMOBILES—STANDING.

> Defendant had no standing to argue the constitutionality of a search of an automobile and the seizure of a gun from the occupants of the car where the defendant had been riding in the car searched, the defendant was arrested for a traffic violation, after a routine check showed the defendant was wanted for parole violation, the defendant was taken to the police station, a search revealed defendant was wearing an empty shoulder holster, a police dispatch was sent to stop the car in which the defendant had been riding, and a search of the occupants produced the gun.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures §§ 7, 8, 11.
[2] 47 Am Jur, Searches and Seizures § 18.
[3–5] 21 Am Jur 2d, Criminal Law § 368.
[6] 53 Am Jur, Trial § 457.
[7, 8, 10, 11] 29 Am Jur 2d, Evidence §§ 418–424.
[9] 29 Am Jur 2d, Evidence §§ 410–412.

3. CRIMINAL LAW—ILLEGAL LINEUP—APPEAL AND ERROR.

Defendant's claim of a prejudicial lineup procedure was heard on appeal, even though the defendant did not timely object to the lineup procedure, where the guidelines for the preservation of an illegal lineup issue were not available at the time of the defendant's trial, 1967, and where a complete record makes remanding for an evidentiary hearing unnecessary.

4. CRIMINAL LAW—LINEUPS—PREJUDICIAL LINEUP—PARTICIPANTS' RESEMBLANCE TO DEFENDANT.

A lineup in which the defendant, charged with armed robbery, was identified was not prejudicial where the members of the lineup fairly resembled the witnesses' description of the robber and several members of the lineup resembled the defendant.

5. CRIMINAL LAW—LINEUPS—RIGHT TO COUNSEL—PRE-WADE CASES.

Defendant's not being represented by counsel at lineup did not, in itself, deny defendant due process where the lineups were conducted prior to the United States Supreme Court decision establishing a right to counsel at that stage of the proceedings and holding that the decision was to be given prospective application only.

6. ROBBERY—ARMED ROBBERY—PROSECUTOR'S REMARKS—OPENING STATEMENT—FAILURE TO PROVE—BAD FAITH.

Prosecutor's opening statement references to a hooded sweatshirt and canvas money bags found in the defendant's car did not constitute reversible error even though the prosecutor failed to produce the exhibits, in defendant's trial for armed robbery and witnesses to the robbery had stated that the robber wore a hooded sweatshirt and put the stolen money in canvas money bags where the defendant has not shown nor has an examination of the record revealed bad faith on the part of the prosecutor.

CONCURRENCE BY LEVIN, J.

7. SEARCHES AND SEIZURES—EXCLUSIONARY RULE—PURPOSE.

*The rule excluding illegally-seized evidence seeks to discourage unlawful police procedures by depriving the State of the fruit of illegal behavior; the objective of the rule is undermined by allowing illegally-seized evidence to be admitted so long as it is used against someone other than the person from whom it was illegally taken.*

8. SEARCHES AND SEIZURES — EXCLUSIONARY RULE — STANDING — SEARCH OF THIRD PARTY.

*The rule that a defendant has the right to object to the use against him of evidence illegally seized from another should be adopted in this state.*

9. SEARCHES AND SEIZURES—FOURTH AMENDMENT—SCOPE OF PROTECTION—MEANING.

*The Fourth Amendment protects people, not places; a core meaning of the Fourth Amendment is that a citizen's privacy shall be respected by the State.*

10. SEARCHES AND SEIZURES—EXCLUSIONARY RULE—"NO STANDING" RULE—EFFECT.

*The rule allowing illegally-seized evidence to be used against anyone except the person from whom the evidence was illegally taken does not respect or protect the privacy of the citizen; such a rule, in "no standing" cases, rewards the police for intruding on a citizen's privacy and encourages offensive and lawless procedures.*

11. SEARCHES AND SEIZURES—STANDING.

*A defendant had standing to contest the legality of a search of an automobile and the seizure of a pistol from one of the occupants of the car where the defendant had been driving the car searched, the car had been leased by the defendant, the defendant, when stopped by the police for a traffic violation, threw the gun on the back seat of the car, a female occupant of the car subsequently put the gun in her purse, the defendant was taken to the police station when a routine check revealed he was wanted for parole violation, the police searched the defendant and found an empty shoulder holster, the police dispatched a message calling for the stopping of the car and the other occupants were still in the car when the search occurred, because the defendant had possessory interests in the car and the gun, because he was legitimately "on the premises" of the car when he placed the gun on the back seat, and because the investigation had focused on and the search aimed at the defendant.*

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 December 7, 1970, at Detroit. (Docket No. 9117.) Decided April 22, 1971. Leave to appeal denied, 386 Mich 758.

Alfonso Joshua was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Ralph Musilli,* for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

LESINSKI, C. J. Defendant, Alfonso Joshua, was convicted by a jury of armed robbery, MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797). He appeals as of right alleging illegal search and seizure, prejudicial lineup procedures, and trial error.

Defendant was arrested for a traffic violation. After a routine check at the police station, it was found he was wanted for violation of probation. When a personal search revealed defendant was wearing an empty shoulder holster, the police radioed a call to stop the car and the two occupants with defendant when he was apprehended. A search of the occupants produced a .32-caliber pistol alleged to have been given them by defendant immediately before his arrest.

Defendant was identified as the man who had robbed a shoe store at gunpoint three weeks earlier in three separate lineups by the manager of the store and two witnesses.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 *as amended in* 1968.

Defendant's first claim of error is that the pistol was improperly admitted into evidence as the fruit of an illegal search of the occupants of the car. Defendant has no standing to complain of the search of the occupants. The immunity from illegal searches and seizures is a personal privilege. "No rights, constitutional or otherwise, are involved when property not under the control of defendant is searched." *People* v. *Hale* (1967), 7 Mich App 127, 132; *People* v. *Goeppner* (1969), 20 Mich App 425. We find no error.

Despite the absence of timely objection, we proceed to consider the merits of defendant's claim that the conduct of the lineup was prejudicial. The guidelines for preservation of this issue below were not available at the time of defendant's trial in 1967, and the presence of a complete record makes remand for an evidentiary hearing unnecessary. See *People* v. *Childers* (1969), 20 Mich App 639, 646.

The conduct of the lineup was not prejudicial. The record reveals that the members of the lineup fairly resembled the description of the robber given by the witnesses. Descriptions of the participants in the showup reveal several members resembled defendant. We conclude that the lineups were not unnecessarily suggestive or conducive to mistaken identification as to deny him due process of law. *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199).

The fact that defendant was not represented by counsel at these lineups did not deprive him of due process of law. The rule establishing the right to counsel at that stage of the proceedings was announced in *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). That decision was only given prospective application. *Stovall* v.

*Denno, supra.* Since the lineups in the instant case occurred prior to *Wade,* denial of counsel did not, alone, establish lack of due process.

The suspect described by the witnesses to the robbery wore a blue hooded sweatshirt and put the stolen money into canvas money bags. The prosecutor, in his opening statement, made reference to the fact the search of the vehicle produced a blue hooded sweatshirt and several canvas money bags. At trial these exhibits were not available as evidence and the prosecutor was not permitted to question witnesses regarding these exhibits. No objection to the prosecutor's remarks was raised at the close of proofs, nor in the motion for new trial. In *People* v. *Fowler* (1895), 104 Mich 449, 452, it was said:

"If this statement was made in good faith by the prosecuting officer, and on the trial he found that the proofs did not substantiate the statement, we do not think that, for that reason alone, the conviction should be reversed. The prosecuting attorney may not always find that the proofs will meet the case he expects to make when he makes his opening statement to the jury, and it is not every failure of proof, under such circumstances, that warrants a reversal. In this case the fact was not proved and the jury must be presumed to have based their verdict upon the evidence and not upon the statement of counsel."

Defendant has not shown, nor has a thorough examination of the record revealed, bad faith on the part of the prosecutor.

The prosecutor's remark in closing argument that a man who points a gun at another with a demand for money infers, "Your money or your life", was a reasonable inference from the facts in evidence. The prosecutor is entitled to comment on the evi-

dence and draw reasonable inferences therefrom. *People* v. *Morlock* (1925), 233 Mich 284. We find no error.

Affirmed.

O'HARA, J., concurred.

LEVIN, J. (*concurring*). I concur in affirming the defendant's conviction because the police acted properly in searching the occupants of the automobile for a pistol and because the other assignments of error are without merit.

I cannot join in the Court's opinion because it says that even if the pistol had been illegally seized it would be admissible in evidence because it was taken from someone other than the defendant.

The exclusionary rule seeks to discourage unlawful police procedures by depriving the State of the fruit of illegal behavior. That objective is undermined by a rule which treats as admissible illegally-seized evidence as long as it is used against someone other than the person from whom it is illegally taken.[1]

I recognize that in *Alderman* v. *United States* (1969), 394 US 165, 171 (89 S Ct 961, 22 L Ed 2d 176), *reh den* 394 US 939 (89 S Ct 1177, 22 L Ed 2d 475), the United States Supreme Court held, in

---

[1] See Grove, Suppression of Illegally Obtained Evidence: The Standing Requirement on its Last Leg, 18 Catholic U L Rev 150, 154, 177 (1968); Note, Standing to Object to an Unreasonable Search and Seizure, 34 Chicago U L Rev 342, 366 (1967); Note, Standing and the Fourth Amendment, 38 Cinci L Rev 691, 701 (1969); Comment, Standing to Object to Unreasonable Search and Seizure, 34 Mo L Rev 575, 587 (1969); Note, Standing to Object to an Unlawful Search and Seizure, Wash Univ L Qty (1965), p 488, 519, 520. But see White and Greenspan, Standing to Object to Search and Seizure, 118 U Pa L Rev 333 (1970); for a response see 38 Cinci L Rev, *supra*, pp 701, 702.

See also ALI, A Model Code of Pre-Arraignment Procedure, T D No 3, § 8.01, pp 103–105.

effect, that only those "whose rights were violated" by an illegal search have standing to complain.[2] That minimum standard does not, as the Supreme Court itself observed,[3] preclude the states from recognizing a higher standard.

The California Supreme Court has declared:

"if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a limitation virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them." *People* v. *Martin* (1933), 45 Cal 2d 755, 760 (290 P2d 855, 857).

In my opinion, Michigan should adopt the rule adopted by the California Supreme Court. Even though a man's privacy may have been grossly violated by the police he is not likely to complain unless he is charged with an offense—if he complains he may be charged as an accomplice. Unless the accused person can complain, no one will have both the right and the incentive to complain.

The Fourth Amendment protects "people, not places".[4] A core meaning is that a citizen's privacy shall be respected by the State.[5] The rule for which the majority write does not respect or protect the privacy of the citizen. It rewards the police for intruding on a citizen's privacy in "no-standing"

---

[2] In *Alderman* the Court held that coconspirators and codefendants whose rights were not violated by illegal eavesdropping have no standing to object to the admission of evidence obtained as a fruit of such eavesdropping.

[3] *Adlerman* v. *United States, supra,* p 175.

[4] *Katz* v. *United States* (1967), 389 US 347, 351 (88 S Ct 507, 19 L Ed 2d 576).

[5] See *Warden, Maryland Penitentiary,* v. *Hayden* (1967), 387 US 294, 304 (87 S Ct 1642, 18 L Ed 2d 782).

cases and, therefore, encourages offensive and lawless procedures.

The "no-standing" rule is difficult to administer. It adds boggling complexity to what has become an unnecessarily intricate body of law.

Additionally, on the facts of this case Joshua had standing to complain. When he was stopped by the police he was driving an automobile that he had leased. He threw the pistol on the back seat of the automobile. Subsequently, a female occupant of the automobile put the pistol in her purse.

In *State* v. *Wade* (1965), 89 NJ Super 139, 149 (214 A2d 411, 417), a New Jersey appellate court declared:

"an admitted owner of personal property found and seized by the police in the course of an illegal search of the premises or property of another has standing as a defendant to object to the use of such property as evidence against him notwithstanding he was not present and had no possessory interest in the premises searched at the time of the search."

In *Dean* v. *Fogliani* (1965), 81 Nev 541 (407 P2d 580, 582), the Nevada Supreme Court declared:

"The accused now need only establish that he was legitimately on the premises when he placed the fruits of the search there and where the search later occurred. His personal presence at the time of the search is not a necessary ingredient."

Joshua had a possessory interest in the automobile and a possessory interest in the pistol.[6] He was legitimately "on the premises" of the automobile when he placed the fruits of the search on the back

---

[6] See *United States* v. *Jeffers* (1951), 342 US 48, 54 (72 S Ct 93, 96 L Ed 59) where the defendant was held to have standing to complain about an illegal search and seizure of contraband that he had stored on premises occupied by other persons.

seat. The other occupants were still in the automobile when the search occurred. See *Jones* v. *United States* (1960), 362 US 257, 261 (80 S Ct 725, 4 L Ed 2d 697, 78 ALR2d 233).

The testimony also showed that when the police searched the occupants the investigation had already focused on Joshua.[7] Surely the individual against whom the search is aimed has standing to complain about the legality of the means employed by the police in making the search. See *Jones* v. *United States, supra,* p 261, where the United States Supreme Court declared that "one against whom the search was directed" has standing to complain of an unlawful search and seizure.[8]

While Joshua had standing to complain, his complaint lacks substantive merit. On the facts of this case, the police were justified in stopping and searching the automobile and its occupants for a pistol.

---

[7] When the police discovered at the station house that Joshua was wearing an empty holster, a radio call was dispatched to stop the automobile. When the automobile was stopped, it and its occupants were searched to determine whether, as suspected, Joshua, who was then under arrest, had indeed left a pistol in the automobile or with one of the other occupants when he was asked to accompany the officers to the station house. The record would not support a finding that the occupants consented to the search. *Cf. People* v. *Marshall* (1970), 25 Mich App 376, 381. As to the right of a possessor of incriminating evidence to consent to a search to exculpate himself, see *People* v. *Smith* (1969), 19 Mich App 359, 371, fn 12 last paragraph.

[8] See White and Greenspan, Standing to Object to Search and Seizure, 118 U Pa L Rev 333, 349 (1970).