PEOPLE v EMBRY

1. CRIMINAL LAW—APPEAL AND ERROR—CRIMINAL RECORDS—REDI-
   RECT EXAMINATION—OBJECTIONS.

   It is not reversible error to allow the prosecutor on redirect
   examination of a prosecution witness to elicit testimony con-
   cerning the defendant's criminal record, although defendant's
   objection to the same testimony had been upheld on direct
   examination and the testimony had been ordered stricken,
   where the challenged testimony had been brought out on cross-
   examination of the same witness conducted by the defense
   counsel.

2. CRIMINAL LAW—PROSECUTORS—WITNESSES—CREDIBILITY.

   The prosecutor may argue the credence of witnesses to the jury
   where the testimony is conflicting and the result depends on
   which of two witnesses is to be believed; however, a prosecutor
   may not place the weight of his office behind the prosecution or
   vouch for the credibility of the prosecution's witnesses or
   evidence.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-
   FENSES—ORDER OF CONSIDERING VERDICTS.

   It is not the law that a jury must consider possible verdicts in
   any particular order; although an instruction to this effect is
   undesirable and expressly discouraged it is not reversibly erro-
   neous unless the jury is instructed that it must first decide on
   the greater of two or more offenses and reach a unanimous
   agreement on it before it can consider a lesser offense.

Appeal from Calhoun, Ronald M. Ryan, J. Sub-
mitted April 9, 1976, at Grand Rapids. (Docket No.
21027.) Decided May 17, 1976.

Howard L. Embry was convicted of breaking and

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 553.
[2] 81 Am Jur 2d, Witnesses §§ 656–669.
[3] 21 Am Jur 2d, Criminal Law §§ 185, 494.

entering with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John J. Rae,* Prosecuting Attorney, and *Conrad J. Sindt,* Assistant Prosecuting Attorney, for the people.

*Sharon M. Sloan,* Assistant State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and N. J. KAUFMAN and E. A. QUINNELL, JJ.

N. J. KAUFMAN, J. Defendant was convicted by a Calhoun County Circuit Court jury of breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305. He was subsequently sentenced to a term of from 4 to 15 years in prison and now appeals as of right.

At trial, James Stone, the complainant, testified that, at about 2:30 or 3 a.m. on the morning of October 28, 1973, he was sleeping in the living room of his house and was awakened by noise from his bedroom. He saw defendant, whom Stone had known since defendant was a child, rifling a set of drawers. When Stone tried to stop defendant, the two scuffled and defendant ran out of the house. The complainant testified that, although he had locked the rear door of his house when he retired, after the crime he found that the latch on that door and the one on his bedroom door had been torn open. Soon after defendant ran out, Stone called the police and reported the loss of a check and some half-dollars.

Defendant took the stand in his own behalf. After admitting two prior criminal convictions, he

---

* Circuit judge, sitting on the Court of Appeals by assignment.

claimed that earlier in the evening of the alleged robbery he had been invited to the Stone residence by a Sandra Taylor who also lived there. According to defendant, when he arrived at the house he found the door open, knocked and walked in where he observed Mr. Stone lying on the couch. After trying to awaken Mr. Stone, defendant was "turning around, looking around and hollering for somebody else" when Mr. Stone arose, scuffled with defendant, and forced defendant to flee the premises.

On appeal, defendant propounds three claims of error. First, defendant contends that the trial court committed reversible error by allowing, over defense objection, the investigating officer to make mention of defendant's mug shots. Before defendant had taken the stand and admitted prior convictions, the prosecutor called Officer McGaha, the investigating officer. McGaha testified that, while he was responding to the call from Mr. Stone, he saw defendant standing at an intersection near the Stone residence. The officer stated that defendant was breathing deeply as though he had been running.

On three different occasions during the course of his testimony, Officer McGaha testified that he had examined police department mug shots to determine if the man he had seen near the Stone residence was the defendant. The officer's first reference to mug shots occurred during direct examination, was properly objected to by defense counsel, and was stricken by the prosecutor himself. Officer McGaha's second reference to mug shots occurred during cross-examination and was not objected to by either party. The witness's third reference to mug shots occurred during redirect examination when the witness stated that he had

picked out defendant's mug shot, whereupon defense counsel objected to the testimony and moved that it be stricken. However, the trial judge refused to do so on the basis that "it was brought out in the cross-examination of the witness in answer to the question of counsel as to how he determined who the defendant—who the party was—and so he explained that. So I assume the prosecutor has a right to further questioning". Defendant's appellate challenge is based on this ruling.

It is true that where a defendant has not taken the stand the testimony concerning a defendant's mug shot or admission of the photo itself will impermissibly place his criminal record before the jury. *People v Heller,* 47 Mich App 408; 209 NW2d 439 (1973). This Court, as defendant notes, has looked with disfavor on the introduction of evidence, even oblique or unresponsive testimony, referring to a defendant's criminal record before he has taken the stand. See, *e.g., People v Deblauwe,* 60 Mich App 103; 230 NW2d 328 (1975), *People v Buffa,* 51 Mich App 680; 216 NW2d 494 (1974), *People v McCartney,* 46 Mich App 691; 208 NW2d 547 (1973). *Cf. People v Willis,* 60 Mich App 154; 230 NW2d 353 (1975), *People v Averill,* 59 Mich App 507; 229 NW2d 827 (1975). However, we take an equally dim view of a defendant using invited error as a basis for appeal. *People v Collins,* 63 Mich App 376; 234 NW2d 531 (1975). In the instant case, defense counsel questioned Officer McGaha about his identification of defendant with full knowledge from the prior stricken testimony that mug shots were used to make that identification. He nonetheless elicited the fact that mug shots were used. Nor did he attempt to have the officer's testimony stricken as unresponsive.

We, therefore, agree with the court and with the plaintiff that the challenged testimony was invited by prior defense questioning. We do not, however, condone the unnecessary, repetitive and prejudicial eliciting by the prosecutor of the same information brought out by defense counsel. This action did not rise to the level of reversible error.

Defendant's second claim of error is that he was denied a fair trial when the prosecutor improperly vouched for the credibility of a prosecution witness and denigrated defendant's testimony. There was no defense objection to the remarks challenged on appeal. While a prosecutor may not vouch for the evidence or place the weight of his office behind the prosecution, he, within limits, may argue the credence of witnesses to the jury where, as here, the testimony is conflicting and the result depends on which of two witnesses is to be believed. *People v Davis,* 57 Mich App 505; 226 NW2d 540 (1975), *lv den,* 394 Mich 817 (1975). We find that the challenged statements did not exceed proper limits and certainly did not constitute a miscarriage of justice. MCLA 768.26; MSA 28.1049. *People v Phillips,* 61 Mich App 138; 232 NW2d 333 (1975).

Defendant's final appellate contention is that the trial court committed reversible error in its instruction to the jury on consideration of lesser included offenses. In the challenged instruction, the court stated, in relevant part:

"So when you retire to the juryroom, you will have the right to consider four possible verdicts. If you are convinced beyond a reasonable doubt that the Defendant did, on the date mentioned, break and enter the home of Mr. Stone with intent to commit the crime of larceny therein, then, of course, the Defendant is guilty, and you should bring in a guilty verdict.

"Now, if you are not convinced that the Defendant is

guilty of the offense in count one, you may consider whether or not you are convinced beyond a reasonable doubt that he did feloniously enter the premises of Mr. Stone without breaking with intent to commit the crime of larceny therein. If you are not convinced beyond a reasonable doubt that the Defendant committed that offense, you may determine whether or not the Defendant did, on the date mentioned, enter the premises of Mr. Stone, that is the dwelling-house of Mr. Stone without permission from the owner.

"If, on the other hand, you are not convinced beyond a reasonable doubt that the Defendant committed or is guilty of any one of the three offenses mentioned, then, of course, he would be not guilty, and you should acquit him."

Defendant argues that, by instructing the jury that they must consider the offenses in a specific order, the court was unduly restricting the jury's ability to decide the case and, perhaps, to reach a compromise verdict. Defendant did not object to this instruction.

This issue has produced a significant amount of recent case law. See, *e.g., People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), *People v Harmon,* 54 Mich App 393; 221 NW2d 176 (1974), *People v Bankston,* 61 Mich App 275; 232 NW2d 381 (1975), *People v Don Francisco Lopez,* 65 Mich App 653; 237 NW2d 599 (1975). The standard for determining when it may be reversible error to require the jury to consider offenses in a particular order was recently stated in *People v Waldron,* 64 Mich App 648, 653; 236 NW2d 732 (1975):

"Although it is not the law in this state that a jury must consider possible verdicts in any particular order, an instruction to this effect, although undesirable and expressly discouraged, is not reversibly erroneous. It is only when a jury is instructed that they must first decide the greater charge and reach *unanimous agree-*

*ment* on it before they can even consider lesser offenses that reversible error arises." (Emphasis supplied.)

Unlike *People v Ray, supra,* and *People v Harmon, supra,* the cases on which defendant relies, the instant instruction did not require unanimous agreement on one charge before considering a lesser charge. Therefore, no error was committed. We reiterate, however, that such an instruction is not favored and may impinge on the jury's deliberations or create confusion. The Supreme Court has recently noted that:

"To speak of a requirement that the jury 'justify' its conclusion that the defendant is not guilty of the higher charge before 'allowing' it to convict of the lesser is antithetical to the nature of a jury trial. See *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975)." *People v Chamblis,* 395 Mich 408, 420; 236 NW2d 473 (1975).

We read this statement as encouraging minimal intrusion upon jury deliberations. It further recognizes the prevalence of compromise verdicts and the ability of a jury to "do justice". We do not read it as a statement on the instant issue clear enough to alter the state of the law.

Affirmed.