PEOPLE v FLANAGAN

Docket No. 63251. Submitted April 19, 1983, at Lansing.—Decided
     October 24, 1983.

Jerry W. Flanagan was convicted of three counts of first-degree
     criminal sexual conduct, Oakland Circuit Court, Alice L. Gil-
     bert, J. Defendant appealed, alleging error in the prosecutor's
     being allowed to cross-examine defendant regarding his marital
     status at the time of the assaults, that the prosecutor imper-
     missibly vouched for the credibility of the prosecution wit-
     nesses, and that there was insufficient evidence for a finding
     that defendant was armed with a knife during the assaults.
     *Held:*

     1. It was improper for the trial court to allow the prosecutor
     to question the defendant about his marital status and alleged
     marital difficulties at the time of the assaults. The prosecutor
     argued that defendant's access or lack of access to "normal"
     sexual relations was probative of his propensity to commit the
     assaults. The questioning was improper. The error was harm-
     less, however, because of the overwhelming evidence of defen-
     dant's guilt.

     2. The comments of the prosecutor regarding the evidence
     and the witnesses, while vouching for the witnesses, were not,
     when taken in context, so flagrant that they could not have
     been cured by a timely objection and request for a cautionary
     instruction.

     3. It was not necessary that the knife used in the assaults be

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 881.
    29 Am Jur 2d, Evidence §§ 250, 251.
[2] 65 Am Jur 2d, Rape § 56.
[3] 5 Am Jur 2d, Appeal and Error §§ 624, 625.
[4] 75 Am Jur 2d, Trial § 260.
[5] 5 Am Jur 2d, Appeal and Error § 883.
    30 Am Jur 2d, Evidence § 1170.
[6] 6 Am Jur 2d, Assault and Battery § 53.
    29 Am Jur 2d, Evidence § 771.
[7] 79 Am Jur 2d, Weapons and Firearms §§ 7-9.
[8, 9] 5 Am Jur 2d, Appeal and Error §§ 776, 780, 781.
[9] 75 Am Jur 2d, Trial § 193 *et seq.*

introduced into evidence because there was testimony describing the weapon and establishing that it was used. Also, evidence that the knife was accessible to the defendant during the assaults was sufficient to establish that he possessed the knife.

Affirmed.

N. J. KAUFMAN, J., dissented. He would hold that the prosecutor's questioning of defendant regarding his marital problems was impermissible and was not harmless error because the error was deliberately injected into the trial and was so offensive to the maintenance of a sound judicial system that its presence cannot be condoned. He would reverse.

OPINION OF THE COURT

1. EVIDENCE — RELEVANT EVIDENCE — APPEAL — RULES OF EVIDENCE.

Relevant evidence is that having any tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence, and it is generally admissible; however, a trial court may choose to exclude evidence, even if relevant, on the ground of prejudice, confusion, or waste of time, and the exercise of the trial court's discretion in determining the admissibility of evidence will not be overturned unless there has been a clear abuse of that discretion (MRE 401, 402, 403).

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — DEFENDANT'S MARITAL STATUS.

It is improper for a prosecutor to inquire into a defendant's marital status in an attempt to present evidence of the defendant's access to "normal" sexual relations as probative of his propensity to commit rape.

3. CRIMINAL LAW — APPEAL — PROSECUTOR'S COMMENTS.

Appellate review of allegedly improper remarks of a prosecutor is precluded absent objection raised at trial unless the failure to review would result in a miscarriage of justice.

4. CRIMINAL LAW — TRIAL — PROSECUTOR'S COMMENTS — WITNESSES.

A prosecutor may not vouch for the credibility of his witnesses; however, he may make fair comments on the evidence including arguing the credibility of witnesses to the jury when there is conflicting testimony and the question of the defendant's guilt or innocence turns on which witness is believed.

5. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF THE EVIDENCE.

The prosecution has the burden of proving every element of a crime charged beyond a reasonable doubt and, in examining a defendant's claim that there was insufficient evidence presented to sustain his conviction, the Court of Appeals must determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

6. EVIDENCE — WEAPONS.

A weapon allegedly used in an assault need not be introduced into evidence where there is testimony describing the weapon and establishing that it was used.

7. WEAPONS — POSSESSION OF WEAPON — ACCESS TO WEAPON.

A defendant is in possession of a weapon when he commits a crime if the weapon is accessible to him during the commission of the crime.

DISSENT BY N. J. KAUFMAN, J.

8. TRIAL — ERROR — HARMLESS ERROR.

*Two inquiries are pertinent where it is claimed that an error at trial is harmless: (1) is the error so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless, and (2) was the error harmless beyond a reasonable doubt.*

9. TRIAL — ERROR — HARMLESS ERROR.

*An error may be offensive to the maintenance of a sound judicial system, and therefore not harmless error, if it is deliberately injected into the proceedings by the prosecutor, if it deprives the defendant of a fundamental element of the adversary process, or if it is particularly inflammatory.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lisa Varnier,* Assistant Prosecuting Attorney, for the people.

*Angela Palmieri,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and N. J. KAUFMAN,* JJ.

V. J. BRENNAN, P.J. After a jury trial, the defendant was convicted of three counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). Defendant was sentenced to three concurrent 10- to 20-year prison terms and appeals as of right.

The complainants, both 13 years old at the time the offenses occurred, testified at trial that on May 23, 1981, as they were walking to Ortonville, a tan station wagon passed them several times. Finally, the car turned around and stopped next to the girls. The girls approached the car because they believed the driver needed directions. However, when they stood next to the car and poked their heads in the window, defendant slid over to the passenger side of the vehicle and displayed a knife which he held to the throat of one of the girls. He then ordered the girls into the car and they complied.

Defendant then drove the girls to a more secluded area where he lit a pipe filled with marijuana and, according to the girls, forced them to smoke it. Both testified that they smoked the marijuana offered, but did not inhale it. Defendant then offered one-half ounce of marijuana to one of the girls if she would perform fellatio on him. When she refused, he forced her to perform fellatio on him. He next forced the other girl to perform fellatio in the same manner. When she became ill as a result, he again forced the first one to perform fellatio and also forced her twice to have intercourse with him.

The girls stated that, throughout this series of

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

events, the knife, which they described as a lock-blade knife with a brown wooden handle with gold trim, a printed name on the handle that began with the letter "P", and a pointed, three- to four-inch blade, was, at various times during the assaults, in defendant's right hand while his arm was around their necks, on the seat next to him to his left, in his left hand and clenched in his teeth during the incidents of intercourse.

Prior to their successful escape, there was at least one unsuccessful escape attempt by one of the girls. At some time during the second act of intercourse, a struggle ensued between the three people in the vehicle, and the girls managed to escape. The girls testified that they hit and kicked defendant in their efforts to escape from the vehicle. They ran from the vehicle through an open field where they hid in a swamp until they heard defendant's car drive away. After they heard his car drive away, they fled to a nearby home where they called the police and the father of one of the girls.

Defendant's version of the events differed significantly from the girls' version. According to defendant, the girls flagged him down and asked for a ride into Ortonville. When they got into the car, they noted his marijuana pipe in the ashtray and asked if he had any marijuana.

Defendant testified that he told the girls he had some marijuana. He then drove to a more secluded spot to roll a "joint" for them to smoke with him because the pipe screen in his pipe was clogged. When they arrived at the secluded spot, because he had no papers with which to roll a joint, he cleaned the pipe screen and the three ultimately smoked two bowls of marijuana from the pipe. He denied that he forced the girls to smoke the marijuana.

He testified that one of the girls asked him if he would trade some of his marijuana for a speed pill. When he declined, she asked him to give her some marijuana. Upon defendant's continued refusal to supply the girls with marijuana, one girl told the defendant that she was not 15 as she stated earlier, but only 13 years old, and if he refused to give her marijuana, she would tell the police that he had raped her. Defendant further testified that he became angry and pushed the girls from his car. Initially, his dog chased the girls, but returned to the car when he called him.

On cross-examination, the prosecutor questioned defendant about marital problems that he had around the time the sexual assaults occurred. The prosecutor then questioned him about his subsequent divorce, to which defense counsel objected on the grounds of relevance. The prosecutor argued that it was probative of "whether or not the normal sexual desires in a male would have to be satisfied". The trial court overruled defense counsel's objection and allowed the question. He denied that he had marital problems prior to the alleged assaults. According to his testimony, the problems originated on the day his wife found out about the alleged assaults.

In an effort to establish the complainants' version of the events as the correct one, the prosecutor introduced medical evidence which tended to corroborate their story. Both Susan Jones and Dr. Hayden, the nurse and examining physician who treated the girls at Pontiac Osteopathic Hospital shortly after the alleged assaults, testified that one of the girls suffered two small vaginal tears consistent with sexual intercourse and that there was a small amount of bloody discharge.

Nurse Jones described the girls as upset, ex-

tremely dirty, and disheveled at the time she examined them. Sheryl Martin, whom the girls approached for help after they escaped from Mr. Flanagan's vehicle, testified that the two girls were crying when they arrived at her house. Trooper Harry C. Delodder, who transported the girls to the hospital, testified that they were upset and crying when he first saw them.

Defendant's first claim is that the prosecutor's cross-examination of the defendant about his divorce and the satisfaction of his sexual needs, over defense counsel's objection, amounted to prejudicial error.

On cross-examination of defendant, the prosecutor questioned the defendant about whether he had marital problems at the time of the sexual assaults. Defendant denied that there were problems. When the prosecutor questioned him about his subsequent divorce, defense counsel objected on the grounds of relevance. The prosecutor then argued that the defendant's marital problems were relevant to show motive since defendant may not have had his "normal" male sexual desires satisfied prior to the assaults.

The trial court overruled the objection and defendant was again asked whether his marital problems began prior to the sexual assaults. Defendant replied that his problems began on the date of the assaults.

"Relevant evidence is 'evidence having any tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence'. MRE 401. Relevant evidence is generally admissible; irrelevant evidence is not. MRE 402. Even if relevant, a trial court may choose to exclude evidence on the ground of prejudice, confusion, or waste of time. MRE 403. The admissibility of evidence is a question

that rests in the trial court's discretion and the exercise of the court's discretion will not be overturned unless there has been a clear abuse of that discretion. *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977)." *People v O'Brien,* 113 Mich App 183, 203; 317 NW2d 570 (1982).

See *People v Howard,* 391 Mich 597, 603; 218 NW2d 20 (1974).

The defendant in the case at bar contends that the prosecutor should not have been permitted to question him about his marital status at the time of the alleged assaults. We agree. The prosecutor argued that defendant's ability to fulfill his "normal" male sexual desires was probative of his motive to rape the complainants. The prosecutor attempted to inject, through his cross-examination of the defendant, the possibility that the defendant's impending divorce affected his propensity to commit criminal sexual assaults. The trial court agreed, and allowed the prosecutor to pursue that line of questioning. The prosecutor on appeal makes a similar argument. Our Supreme Court has spoken to this issue in *People v Travis,* 246 Mich 514, 516; 224 NW 329 (1929):

"In admitting this testimony and limiting it to a time prior to the arrest, the jury was given to understand that a man who had not had sexual intercourse for a considerable period of time would be more inclined to commit rape than one whose sexual desires had been regularly satisfied. It was on this theory that the prosecuting attorney brought out the testimony and apparently on this theory the court admitted it as evidence which the jury might weigh against the defendant in determining his guilt. The prejudicial effect of this testimony would more plainly appear in the case of an unmarried defendant called upon to answer a charge of rape. His virtue and continence would be used against him. The jury was required to determine the truth of

the story told by the girl or that related by the defendant. Against the probability of the truth of the defendant's story, which was a complete denial of the charge, they were allowed to consider the fact that he had not had sexual intercourse with his wife for four years. The harmful effect of this testimony was emphasized by the prosecuting attorney in again referring to it in his argument to the jury. For this error the judgment should be reversed."

The Supreme Court has also addressed an analogous issue and found that, ordinarily, evidence of poverty is inadmissible on the issue of a criminal defendant's motive for larceny. *People v Henderson*, 408 Mich 56; 289 NW2d 376 (1980); *People v Johnson*, 393 Mich 488; 227 NW2d 523 (1975). More recently, this Court found that evidence of defendant's drinking problems could not be used to establish his motive to embezzle. *People v Golden*, 121 Mich App 490; 328 NW2d 667 (1982). By analogy to those cases that hold that poverty or unemployment may not ordinarily be used by the prosecutor to establish motive for larcenous offenses, *Henderson, supra; Johnson, supra,* we believe that the trial court abused its discretion by allowing the prosecutor to use the evidence regarding defendant's access to "normal" sexual relations as probative of defendant's propensity to rape.

However, we believe that the error in the case at bar was harmless beyond a reasonable doubt. *People v Leverette*, 112 Mich App 142; 315 NW2d 876 (1982). The responses to the prosecutor's impermissible questions elicited from the defendant established that he had no marital problems prior to the alleged sexual assaults and that his marital problems began when he was accused of the assaults. The prosecutor then dropped the issue, and it was not raised again at trial or in closing

argument. Thus, this case is distinguishable from *People v Travis, supra,* where the defendant had not had sexual intercourse with his wife for four years and the fact was emphasized by the prosecutor by referring to it in closing argument. We cannot help but be convinced beyond doubt that any error due to the admission of the testimony was harmless when we look at the overwhelming evidence of guilt. The record discloses that the defendant corroborated the girls' testimony of his presence with them in his car; the girls gave consistent accounts of the incident; testimony of medical witnesses that one of the girls suffered small vaginal tears was consistent with her testimony of rape; and testimony of the nurse, the trooper, the parents and the owner of the home they fled to that the girls were visibly upset and shaken was consistent with the girls' version of the events.

Defendant's next claim is that the comments of the prosecutor during argument impermissibly vouched for the credibility of the prosecution witnesses.

If no objection is raised to improper remarks by the prosecutor at trial, appellate review is foreclosed unless the failure to review the remarks would result in a miscarriage of justice. *People v Delgado,* 404 Mich 76, 88; 273 NW2d 395 (1978).

Defendant argues that the prosecutor impermissibly placed the weight of his office behind the testimony of the witnesses he presented by vouching for their credibility. The general rule is clear. It is impermissible for the prosecutor to vouch for the credibility of his witnesses. *People v Ignofo,* 315 Mich 626; 24 NW2d 514 (1946); *People v Embry,* 68 Mich App 667, 671; 243 NW2d 711 (1976); *United States v Bess,* 593 F2d 749 (CA 6,

1979). However, the prosecutor is permitted, as an advocate, to make fair comments on the evidence, *People v Joshua*, 32 Mich App 581; 189 NW2d 105 (1971), including arguing the credibility of witnesses to the jury when there is conflicting testimony and the question of defendant's guilt or innocence turns on which witness is believed. *Embry, supra,* p 671. However, in every case, the remarks of the prosecutor must be viewed with reference to the prosecutor's duty of fairness. *Bess, supra,* pp 753-755, and cases cited therein.

Most of the remarks which defendant in the case at bar alleges are improper fall squarely within the category of remarks approved of in *Embry.* For the most part, they involve prosecutorial statements, without reference to the prosecutor's personal beliefs, which pointed out conflicts in the testimony of the witnesses and why the jurors ought to believe the testimony of the witnesses the prosecutor presented. We believe that these statements amounted to nothing more than effective advocacy.

The prosecutor's characterization of the defendant's story as outrageous, incredible, and impossible to believe, while arguably a fair comment on the evidence, borders on the injection of his personal beliefs into the proceeding. See *Bess,* 593 F2d 756-757. Additionally, his statement that "we" (*i.e.,* apparently the prosecutor's office) believe the girls are telling the truth directly vouches for their credibility. However, we find that, in the context in which they were made, neither of the statements were so flagrant that the error could not have been cured by a timely objection and request for a cautionary instruction. *Delgado, supra; Bess, supra.*

Defendant's final claim is that there was insuffi-

cient evidence for the jury to find beyond a reasonable doubt that defendant was armed with a knife during the offense.

The prosecution has the burden of proving every element of the crime charged beyond a reasonable doubt. In examining a defendant's claim that there was insufficient·evidence produced at trial to sustain his or her conviction, this Court must determine whether a "rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt". *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). Defendant contends that there was insufficient evidence that he was armed to support his convictions of first-degree criminal sexual conduct. First, he argues insufficiency on the grounds that the weapon allegedly used in the sexual assaults was never introduced into evidence. There is no requirement that the weapon be admitted into evidence where there is testimony describing the weapon and establishing that it was used. See, *e.g., People v Brown,* 19 Mich App 66, 69; 172 NW2d 58 (1969). Both witnesses described the knife in detail. While defendant testified that he was not armed, the jury was entitled to disbelieve his testimony.

Second, defendant claims that the evidence showed he was not "armed" during the two incidents of fellatio, since the knife was not on his person at the time those assaults occurred. This Court rejected this precise claim in *People v Davis,* 101 Mich App 198, 201-203; 300 NW2d 497 (1980). In *Davis,* this Court held that the defendant is in "possession" of the weapon if it is accessible to him during the commission of the crime. Here, the testimony showed that the knife was located on the seat next to the defendant during the assaults. Furthermore, the testimony established that, after

the initial assaults, defendant retrieved the knife from the seat beside him and held it in his teeth during further assaults. Hence, the evidence produced at trial clearly established that the weapon was accessible, and, therefore, possessed by the defendant. See also *People v Brown,* 105 Mich App 58, 71; 306 NW2d 392 (1981), *lv gtd* 412 Mich 864 (1981). Defendant's claim on this basis is, therefore, without merit.

Affirmed.

M. J. KELLY, J., concurred.

N. J. KAUFMAN, J. *(dissenting).* I cannot agree that the prosecutor's questioning of defendant concerning his marriage was harmless. Defendant's claim of error is based on the following portion of his cross-examination by the prosecutor:

"*Q.* Mr. Flanagan, on May 23rd of 1981, were you married, sir?

"*A.* Yes, I was.

"*Q.* Having any problems in your marriage back in May of 1981, Mr. Flanagan?

"*A.* No.

"*Q.* Shortly after May of 1981 you were divorced, isn't that true?

"*Mr. Arnkoff:* Objection; that's irrelevant.

"*Mr. Pilchak:* Your Honor, I think that a divorce pending shortly after May of 1981 would be very relevant as to whether or not Mr. Flanagan was having troubles with his marriage and as to whether or not the normal sexual desires in a male would have to be satisfied.

"*Mr. Arnkoff:* I would object to that unless the prosecutor can show the causes of the breakdown of the marriage relationship, which he can't do. He hasn't produced any witnesses that could show any of that. Unless he can produce the divorce decree transcript of

the proceedings, he cannot get into this line of questioning.

*"Mr. Pilchak:* I disagree, your Honor.

*"The Court:* Overruled.

*"Q. (Continuing by Mr. Pilchak):* Isn't it true that in August of 1981 your wife filed for divorce?

*"A.* I'm not sure it was August; that could well be.

*"Q.* Did your problems with your wife go back to May of 1981?

*"A.* They went back until then, yes.

*"Q.* You were having problems with your wife back then?

*"A.* No.

*"Q.* You said your problems went back until then?

*"A.* The *[sic]* originated that day.

*"Q.* And eventually you and your wife became divorced?

*"A.* I believe a week or two ago the decree was finalized.

*"Q.* And that was in December of 1981, wasn't it?

*"A.* I believe that would be right."

I agree with defendant and the majority that his objections to these questions should have been sustained. Our Supreme Court reversed a statutory rape conviction based on a similar cross-examination in *People v Travis,* 246 Mich 514; 224 NW 329 (1929). The Court stated:

"In admitting this testimony and limiting it to a time prior to the arrest, the jury was given to understand that a man who had not had sexual intercourse for a considerable period of time would be more inclined to commit rape than one whose sexual desires had been regularly satisfied. It was on this theory that the prosecuting attorney brought out the testimony and apparently on this theory the court admitted it as evidence which the jury might weigh against the defendant in determining his guilt. The prejudicial effect of this testimony would more plainly appear in the case of an

unmarried defendant called upon to answer a charge of rape. His virtue and continence would be used against him. The jury was required to determine the truth of the story told by the girl or that related by the defendant. Against the probability of the truth of the defendant's story, which was a complete denial of the charge, they were allowed to consider the fact that he had not had sexual intercourse with his wife for four years." *Travis, supra,* p 516.

Defendant's marital problems had no bearing on any issue properly in the case. The court erred by deciding that the evidence was relevant. Moreover, it should have been recognized that any conceivable probative value the evidence had would clearly be outweighed by its prejudicial effect.

The prosecutor claims, and the majority agrees, that any error in the cross-examination of defendant was harmless. Where it is claimed that the error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless? Second, was the error harmless beyond a reasonable doubt? See *People v Mobley,* 390 Mich 57, 65-66; 210 NW2d 327 (1973), and *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

An error may be offensive to the maintenance of a sound judicial system if it is deliberately injected into the proceedings by the prosecutor, if it deprives the defendant of a fundamental element of the adversary process, or if it is particularly inflammatory. See *People v Swan,* 56 Mich App 22, 31-32; 223 NW2d 346 (1974). The purpose of this exception to the harmless error rule is to deter misconduct by the prosecutor and police and to safeguard those individual rights which are so

fundamental that the impact of their denial cannot be assessed fairly. *Swan, supra,* p 32, fn 6.

The prosecutor's questions concerning defendant's marital status were clearly not inadvertent. The irrelevance of the questions to the charges against defendant should have been clear. The reasons advanced for admission of the testimony were implausible in 1929 when *Travis* was decided; they are equally implausible today. The potential for prejudice to defendant's right to an impartial jury should have been evident. Finally, the prejudice which might arise from an examination of a defendant's sex life is very difficult to assess. The error injected into this case by the prosecutor and acquiesced in by the trial judge was so offensive to the maintenance of a sound judicial system that its presence in a trial resulting in conviction cannot be condoned.

The prosecutor argues that the failure to discuss defendant's marital status and divorce in closing argument militates in favor of finding the error harmless. While this argument may be of some force with regard to certain types of evidence, it is of no force here. The prejudicial evidence which the prosecutor disclosed to the jury was not evidence which was rationally probative but inadmissible, but evidence which, while not rationally probative of guilt, might irrationally influence a juror's vote.

Although the prosecutor did not discuss defendant's divorce in his closing argument, he did pursue this line of questioning until defendant admitted that his marital problems originated with his arrest for rape. Although the prosecutor told the judge that the examination concerning defendant's divorce was relevant to the issue of the satisfaction of defendant's sexual desires, de-

fendant's testimony refuted this claim. By eliciting this testimony, however, the prosecutor successfully suggested to the jury that defendant's wife divorced him because of the charges against him. The subtle, but unmistakable, inference which this testimony provided the jury was that even defendant's own wife did not believe his claim of innocence. In effect, the prosecutor invited the jury to substitute this implicit assessment of defendant's credibility for its own. The effect of this "hearsay-by-innuendo" may have been to destroy defendant's credibility in the eyes of at least one juror. It is difficult to conclude that this prejudicial hearsay allegation was not the prosecutor's goal when he embarked on this line of questioning.

The evidence against the defendant in this case was strong. Both victims testified convincingly. Their testimony was corroborated by some physical evidence. Although it is a close question, I doubt that a single juror would have voted to acquit defendant absent the improper questioning by the prosecutor. It is only the prosecutor's deliberate attempt to prevent defendant's trial from being fairly decided by the jury which requires that his conviction be reversed.

I would reverse.