# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON MICHAEL MILES,

        Defendant-Appellant.

UNPUBLISHED
July 17, 2018

No. 335731
Oakland Circuit Court
LC No. 2016-258387-FC

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant Jason Michael Miles appeals as of right from his jury-trial convictions of two counts of second-degree criminal sexual conduct (victim under age 13) (CSC-II), MCL 750.520c(1)(a). The jury found defendant not guilty of four counts of first-degree criminal sexual conduct (victim under age 13) (CSC-I), MCL 750.520b(1)(a). Defendant was sentenced to concurrent terms of 9 to 15 years of imprisonment. We affirm.

## I. BACKGROUND

Defendant was married to the victim's mother for approximately three years. Several years after the divorce, when the victim was a teenager, the victim asked to see a therapist. The victim's mother selected a therapist, Karen Schulte, based on her availability and the fact that Schulte accepted her insurance. At her first appointment with Schulte, in response to questions asked on a standardized intake form, the victim disclosed that she had been sexually abused. Schulte, a mandatory reporter, reported the victim's disclosure to the Department of Health and Human Services (DHHS). Subsequently, Detective Kristine Shuler asked defendant if he would come to the police station and answer a few questions. Defendant agreed. During the interview, which lasted approximately 10 minutes, defendant was confronted with the allegations of sexual abuse. Detective Shuler testified at trial that, upon hearing the allegations, defendant's demeanor changed, and he stated that he would need to speak with an attorney. The prosecutor did not seek to admit as evidence any statements defendant made during the interview or a recording of the interview. Defense counsel, however, insisted that the entire video recording of the interview should be seen by the jury and the trial court permitted it.

The victim testified that defendant would normally abuse her twice a day, virtually every day, during defendant's marriage to the victim's mother. The victim's memories of the abuse

-1-

had been suppressed for some time and came back to her in pieces. According to the victim, she could remember segments of various incidents of abuse during her childhood. Defendant testified in his own defense and maintained that the allegations were false. Defendant explained that his reaction to the allegations during the interview was the result of his shock and dismay at hearing false accusations of such magnitude being levied against him.

The defense theory pursued at trial was that the victim intentionally fabricated the allegations of sexual abuse as a way to explain behavioral issues she was having at the time she sought therapy. This defense was largely successful, resulting in the jury acquitting defendant of four counts of CSC-I related to the most graphic instances of alleged abuse. As noted above, the jury found defendant guilty of two counts of CSC-II related to comparatively less graphic instances of abuse. Defendant subsequently moved the trial court for a new trial, arguing that his counsel was ineffective for failing to seek the opinion of an expert in suggestibility and for making several errors at trial. In the motion, defendant also asked the trial court to order that the victim's counseling records be released to defendant or, alternatively, that the trial court review the records *in camera* to determine whether disclosure was appropriate. The trial court denied defendant's motion for a new trial and denied defendant's request to order an *in camera* review or disclosure of the victim's therapy records.

This appeal followed.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

On appeal, defendant raises multiple claims of ineffective assistance of counsel. Claims of ineffective assistance of counsel present mixed questions of fact and constitutional law. *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016). Any factual findings by the trial court are reviewed for clear error, while questions of law are reviewed de novo. *Id*. at 671-672. Clear error exists if "this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."[1] The right to counsel plays a crucial role in the Sixth Amendment's guarantee of a fair trial by ensuring that the defendant has access to the "skill and knowledge" necessary to respond to the charges against him. *Strickland v Washington*, 466 US 668, 685; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The right to counsel also encompasses the right to the effective assistance of counsel." *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996); see also *Strickland*, 466 US at 686.

---

[1] See also Const 1963, art 1, § 20. Our Constitution's guarantee of the right to counsel is coextensive with that guaranteed by the federal Sixth Amendment. *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994).

An appellate court is required to reverse a defendant's conviction when defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 US at 687. A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660. Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

*Expert Witness*. Defendant first argues that his counsel[2] was ineffective for failing to consult with an expert in suggestibility and present this evidence at trial. As support for his argument, defendant points this Court to his motion for a new trial, to which he attached the affidavit of Dr. Katherine Jacobs. Generally, Dr. Jacobs opined that she could have testified that the victim's memory was unreliable, and that, through improper interview or counseling techniques, or through the suggestion of others around her, she could have been reporting tainted or even false memories. According to defendant and Dr. Jacobs, trial counsel should have looked into this issue further.

The record presented to the trial court makes it clear that trial counsel did, in fact, seek the opinion of an expert. In a pre-trial email, defendant's fiancée informed defense counsel that she had read a book by Dr. Terence Campbell in which Schulte was discussed. The email explained that Dr. Campbell seemed well-versed "in the many ways in which therapists/social workers use discredited and problematic techniques" that can lead to false accusations of sexual abuse. Defendant's fiancée asserted that Dr. Campbell lived and worked near the City of Detroit, and suggested that counsel consult with Dr. Campbell or retain him as an expert in this case. It is not clear from the record whether counsel attempted to consult with Dr. Campbell, as suggested

---

[2] Defendant was represented at trial by two retained attorneys, Randall M. Lewis and Loren M. Dickstein. For simplicity's sake, we use the singular term "counsel" to refer to both.

by defendant's fiancée. In any event, Dr. Campbell would have been of little assistance to defendant as Dr. Campbell was already deceased by the time of defendant's fiancée's email. [3]

Defendant also sent his counsel a pre-trial email asking if it would be possible to "get a specialist that can speak to how memories can be corrupted over time and how cases like these can lead to witch hunts?" Defense counsel responded later that day, explaining, "We hired one already and his opinion was the same as the expert being called by the government. I can look for someone else and get a second opinion." Specifically, defense counsel had already consulted with Dr. Daniel Swerdlow-Freed. Dr. Swerdlow-Freed had been retained as an expert in a number of child sexual-abuse cases, and in some, has been retained in order to testify regarding exactly the same type of issues that Dr. Jacobs discussed in her affidavit—the creation of false memories through suggestion or other external forces. See, e.g., *People v Carver*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No 328157); *People v Chevis*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2013 (Docket No. 304358).[4] Therefore, the record confirms that defense counsel did, in fact, consult with an expert in suggestibility, but that the expert's opinion may not have been favorable to defendant. It is clear to this Court that defense counsel investigated the matter and, having concluded that an expert's testimony would not be beneficial to defendant, made the strategic decision to pursue a different trial strategy.

After trial, defendant did find an expert who suggested in an affidavit that she would have testified in his favor. But, hindsight attacks on defense counsel's trial decisions are generally not enough to show ineffective assistance. Here, there is no indication that Dr. Jacobs's opinion would be any more credible than that of Dr. Swerdlow-Freed. More importantly, defense counsel chose a strategy before trial and stuck to that strategy at trial. Defense counsel's theory was not that the victim's memories were the result of improper suggestion but that the victim was intentionally making false statements to explain her behavioral issues. Dr. Jacobs's opinion would have been inconsistent with this defense strategy. Our role is to determine whether defense counsel's strategic choices were "made after less than complete investigation or if a reasonable decision made particular investigations unnecessary." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (internal citation and notation omitted). We conclude that defense counsel's strategy was the reasonable product of an adequate investigation and that defendant's claim is without merit. We will not second-guess defense counsel's strategy, especially when the strategy was largely successful, leading to defendant's acquittal of the four most-serious charges against him.

---

[3] See *Terence Campbell, Ph.D. Obituary*, <http://www.desmondfuneralhome.com/obituary/Terence-Warren-Campbell-Ph.D./_/1499836> (last accessed May 31, 2018).

[4] These opinions are not binding on this Court as they are unpublished. MCR 7.215(C)(1). We cite these opinions not for their legal analyses, but rather, to show that Dr. Swerdlow-Freed is indeed versed in the same areas as Dr. Jacobs.

*Opinion Testimony*. Defendant also claims that his counsel was ineffective for failing to object to certain testimony from Detective Shuler. Specifically, defendant contends that Detective Shuler was able to present her opinion that the victim was credible and that defense counsel was ineffective for failing to object to this testimony. It has long been the law of our courts that it is "improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

Defendant takes issue with Detective Shuler's testimony regarding her process of investigating a case and submitting the matter to the prosecutor's office. Detective Shuler testified that, in her role as the officer in charge of the case, she sends a case to the prosecutor's office if she believes that there is enough evidence to "go forward with a criminal case." She testified that the prosecutor's office ultimately decides whether to issue charges. Detective Shuler also explained that not all cases she investigates go forward, but that this particular case did.

Defendant argues that Detective Shuler's testimony implied that she believed that the victim was telling the truth. We find this argument tenuous at best. It is not objectionable for officers to testify regarding the "steps of their investigations from their personal perceptions." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Moreover, even assuming that the testimony should have been ruled inadmissible, its admission did not prejudice defendant. "Given that [Detective Shuler] was called as a witness by the prosecutor and that a criminal prosecution against defendant was pursued, the jurors surely understood that [Detective Shuler] believed that the victim was telling the truth." *Dobek*, 274 Mich App at 71. Any juror would have understood, from the simple fact that the case was being tried, that Detective Shuler believed that there was merit to the victim's testimony.

It is likely that defense counsel made a strategic choice not to object to Detective Shuler's testimony. As noted above, any objection was not likely to succeed. In fact, if the objection had succeeded, it would have highlighted Detective Shuler's belief that the victim was telling the truth. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (observing that "there are times when it is better not to object and draw attention to an improper comment"). Defendant has therefore failed to overcome the presumption that counsel acted upon sound trial strategy.

Defendant also briefly suggests that it was improper to present statements made by Detective Shuler during her interview of defendant because the statements also suggested that Detective Shuler believed the victim's accusations. In an attempt to explain defendant's demeanor during his interview, defense counsel successfully argued that the jury should watch the entire video of defendant's interview. In doing so, defense counsel made a strategic choice that defendant's demeanor in the video outweighed any prejudicial statements made by Detective Shuler. Again, we note that defense counsel's strategy was largely successful and defendant was acquitted of the four most serious charges against him. Defense counsel's strategy was reasonable and will not be second-guessed by this Court. To the extent that defendant argues that the trial court erred by admitting the statements in the interview, defendant has waived this issue by way of defense counsel's insistence that the recording of the interview be admitted in its entirety. *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).

Defendant raises several additional claims of ineffective assistance of counsel. We address those claims throughout this opinion simultaneously with other related issues.

B.    Counseling Records

Defendant next argues that the trial court erred when it denied defendant's post-trial request to order disclosure of the victim's counseling records or conduct an *in camera* inspection of the records and that counsel was ineffective for failing to seek the victim's counseling records before trial. In *Stanaway*, 446 Mich at 658, 662-663, the Supreme Court recognized that in cases where a victim of sexual abuse discusses the abuse with a therapist and a defendant wishes to view those records, there is a difficult balance to strike between a defendant's due-process rights and the interests of the victim in obtaining confidential treatment. The Supreme Court held that "in an appropriate case there should be available the option of an in camera inspection by the trial judge of the privileged record on a showing that the defendant has a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *Id*. at 677. This holding is also reflected in MCR 6.201(C):

> (1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2).

> (2) If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

Defendant argues that he could have made a pre-trial showing that the counseling records contained material information necessary to his defense, and that he was entitled to an *in camera* review of the records. We disagree. As it pertains to whether counsel should have sought the records before trial, the record shows that defendant could not have made the required showing. Defendant's argument for disclosure or inspection of the records, which no one disputes are privileged, is that these records could have furthered the theory expounded in Dr. Jacobs's affidavit—the victim's memories were the result of suggestion or other external influences. As we have already explained, however, Dr. Jacobs's theory would have run contrary to defense counsel's largely successful trial strategy—the victim was making false accusations to cover behavioral problems. Thus, had defense counsel attempted to seek the records before trial, defense counsel would have been unable to explain how the records contained any information necessary to the defense, and the pretrial motion would have been rejected by the trial court. *Sabin*, 242 Mich App at 660. Similarly, there was no need to inspect or otherwise entertain a request for disclosure of the records in post-trial proceedings.

C.    Prosecutorial Misconduct

Defendant next raises several claims of prosecutorial misconduct. Relatedly, defendant argues that defense counsel was ineffective for failing to raise several of these claims with the

trial court. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id.* at 382-383.

"A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *Dobek*, 274 Mich App at 76. The prosecutor is "an advocate and he has not only the right but the duty to vigorously argue the people's case." *People v Marji*, 180 Mich App 525, 538; 447 NW2d 835 (1989), remanded on other grounds *People v Thomas*, 439 Mich 896 (1991) (internal citation and notation omitted). Nonetheless, "the prosecutor's duty of fairness" places several limitations are placed on the prosecutor's advocacy. *People v Flanagan*, 129 Mich App 786, 796; 342 NW2d 609 (1983). Accordingly, the "prosecutor must avoid inflaming the prejudices of a jury," *id.* (internal citation and notation omitted), and "cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness," *Bahoda*, 448 Mich at 276. The prosecutor is permitted, however, "as an advocate, to make fair comments on the evidence, including arguing the credibility of witnesses to the jury when there is conflicting testimony and the question of defendant's guilt or innocence turns on which witness is believed." *Flanagan*, 129 Mich App at 796 (internal citations omitted). "A prosecutor need not confine argument to the blandest of all possible terms, but has wide latitude and may argue the evidence and all reasonable inferences from it." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (internal citations and quotation marks omitted).

*Breakdown of the Marriage.* Defendant's first claim of prosecutorial misconduct is that the prosecutor should not have elicited testimony from the victim's mother regarding why her marriage with defendant ended. The victim's mother testified that the marriage broke down because defendant would not be intimate with her. Defendant contends that the only relevance of this testimony was to show that defendant was no longer sexually interested in his wife, an adult, because he was sexually interested in her child, and that the prosecutor committed misconduct by eliciting the testimony.

We find no misconduct. The evidence was relevant for the very reason suggested by defendant—it allowed the jury to infer that defendant was more attracted to children than adults. In turn, defendant's attraction to children provided evidence of defendant's motive for assaulting the victim. In a criminal case, evidence of motive is always relevant. *People v Pinkney*, 316 Mich App 450, 468; 891 NW2d 891 (2016). Given that the evidence was relevant and defendant has not otherwise shown that the evidence was inadmissible, we conclude that the prosecutor's effort to admit the evidence was not misconduct. Because counsel is not ineffective for failing to raise meritless motions or objections, defendant's related claim that his counsel was ineffective for failing to object to the testimony is also without merit. *Sabin*, 242 Mich App at 660.

*Adolescent Macromastia.* Defendant next argues that the prosecutor committed misconduct through her questioning of defendant on the issue of his knowledge of the term "adolescent macromastia." Before testimony began on the second day of trial, defense counsel moved to prohibit the prosecutor from presenting statements from a police report that defendant had used the victim's mother's cellular telephone to search for articles regarding "adolescent macromastia," a condition where "juvenile females develop abnormally large breasts." Defense

counsel argued that this would be MRE 404(b) evidence, and that the prosecutor had not provided the appropriate notice. The prosecutor explained that she did not intend to admit evidence of the search, but rather, that defendant had a conversation with the victim's mother during which he "expressed interest in the developing bodies of adolescent females. So it's not the act. It is the conversation." The trial court explained that the conversation was not a prior bad act and was admissible.

The victim's mother testified that she and defendant "had argued about something where this [adolescent macromastia] was a pertinent topic. And he said he simply had a scientific interest in the developing female body, that he thought it was fascinating." When asked what part of the body defendant found interesting, the victim's mother answered, "Breasts."

During the prosecutor's cross-examination of defendant, the prosecutor asked defendant if he knew what the term "adolescent macromastia" meant and defendant answered, "No." On appeal, it appears that defendant believes that the prosecutor mischaracterized the record during the exchange that followed:

> *Q*. You have no idea?
>
> *A*. Macromastia is, from what was said, large breasts.
>
> *Q*. Well, I didn't say anything until—about it until just now.
>
> *A*. Yes. You said it was brought up earlier.
>
> *Q*. No, I didn't say that. I said, do you know what this means?

Defense counsel objected, arguing that the term had come up earlier and the prosecutor was mischaracterizing the record. The trial court overruled the objection, and the prosecutor continued to question defendant:

> *Q*. I didn't—I'm using this word now.
>
> *A*. Okay.
>
> *Q*. So I didn't ask you—I didn't say anything about what it—You're saying now it's about large breasts. I didn't say that. Those are your words.
>
> *A*. That's correct. You didn't say it.
>
> *Q*. So you know what this—you know what this word means?
>
> *A*. Yes.
>
> *Q*. Not because of what I said but you just defined it right there, didn't you, on the stand.
>
> *A*. It was brought up in—in Melanie's [the victim's mother's] testimony.

*Q.* In Melanie's testimony it was brought up that there was a conversation about developing bodies, but that word was never used.

*A.* Okay.

*Q.* You—I'm using this word, and you just defined it for me, didn't you?

*A.* Wasn't it also in the—the case notes?

*Q.* In the police report?

*A.* Police report, yeah.

*Q.* So you know what it means?

*A.* Yes.

*Q.* Because when I first asked you, you said you did not know what it means.

*A.* The two words together.

Defendant argues that the prosecutor committed misconduct when she stated that she "didn't say anything until—about [macromastia] until just now." According to defendant, the prosecutor's statement mischaracterized the record by implying that the word had not been used or defined in the earlier discussions outside of the jury's presence.

Taken in context, it is clear that the prosecutor's statement was referring to defendant's testimony. In other words, the prosecutor was not saying that she had never uttered the word "macromastia" at any point in time; she was explaining that she had not used the word during defendant's testimony. When defendant suggested that the prosecutor "said it was brought up earlier," the prosecutor accurately stated that she had said no such thing. It is important to recognize that, during the first part of this colloquy, defendant did not state that the term had been brought up earlier. Rather, defendant stated that the prosecutor had *said* that the term was brought up earlier. The prosecutor accurately replied that she had *said* nothing of the sort. Had defendant instead stated that the term was brought up earlier, and the prosecutor rejected that statement as false, then perhaps defendant would have a viable point that the prosecutor had misstated the record. In fact, just moments later, defendant said that the term had been brought up in the victim's mother's testimony, and the prosecutor responded appropriately. Thus, the prosecutor did not commit misconduct during this colloquy.

*Defendant's Interview Demeanor.* Defendant's next claim of prosecutorial misconduct arises from the prosecutor's rebuttal argument during closing. Defense counsel argued to the jury that, when defendant was presented with the allegations of sexual abuse during his interview with Detective Shuler, his reaction was that of an innocent man stunned by the false accusations being made against him. This was consistent with defendant's testimony on the subject. In rebuttal, the prosecutor argued that defendant's reactions and responses were not that of an innocent person. The prosecutor's final statement on the topic was, "He didn't say anything an

innocent person would say when confronted with these allegations during that interview. And I suggest, again, that you watch it again."

Defendant contends that the prosecutor's argument was improper because it implied that the prosecutor had special knowledge that defendant was guilty. Yet, defendant's entire interview was placed into the record by his own counsel, who contended that the interview was proof of defendant's innocence. The prosecutor's comment merely responded to defense counsel's argument, drawing a reasonable inference from the record that defendant's silence was evidence of his guilty conscience. In context, the argument was proper. See *Aldrich*, 246 Mich App at 112; *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001). And again, defendant's related claim that counsel was ineffective for failing to object is without merit, as any objection would have been futile. *Sabin*, 242 Mich App at 660.

*"Twisting Words."* Defendant's next contention of misconduct stems from the rule that a prosecutor may not "suggest that defense counsel is intentionally attempting to mislead the jury." *Watson*, 245 Mich App at 592. Defendant argues that the prosecutor did just that when, in rebuttal, the prosecutor argued that defense counsel had "twisted [the victim's] words around" when discussing the evidence regarding why the victim decided to seek counseling. Defense counsel began his closing argument by stating that the victim was depressed, cutting herself, having problems with grades, "not relating to other kids," and feeling suicidal, which caused her to seek therapy. Defense counsel argued that the victim's disclosure in therapy was a way to explain why she was having these problems, in effect to "dump it on somebody from the past that she had not seen since the divorce." In rebuttal, the prosecutor argued:

> [The victim] didn't say that she went to therapy because her friendships weren't the greatest, her grades were falling down. She was cutting herself. She said that she had such trauma from what was happening that these are—this is how it affected her life. The defendant twisted—or the defense counsel twisted her words around. How do you think a victim of child sexual assault is going to—What do you think their emotional state's going to be when they realize what happened as they're processing it? It's a traumatic experience. You're not going to be cutting yourself and suicidal because your grades are going down in school or maybe some of your friendships aren't the best. That happens.

The prosecutor's argument was facially accurate. The victim had testified that her depression, acts of self-harm, suicidality, and other issues occurred after she realized she had been sexually abused, not before. Read in context, the argument was a proper response to defense counsel's argument, which the prosecutor was not required to make in the blandest of terms. See *Watson*, 245 Mich App at 593 ("It was not improper for the prosecutor to respond [to defense counsel's argument] by emphasizing the truth of the big picture."). Similarly, defendant's related claim that counsel was ineffective for failing to object is without merit, as any objection would have been futile. *Sabin*, 242 Mich App at 660.

*Civic-Duty Argument.* Defendant's final claim of prosecutorial misconduct contends that the prosecutor made an improper "civic duty" argument. "[I]t is improper for a prosecutor to appeal to a jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450, 455-456;

678 NW2d 631 (2004). Defendant argues that the prosecutor did just that by stating, in rebuttal, that "a verdict of not guilty means you don't believe [the victim], you believe she came to court and made this all up." Defendant fails to cite the prosecutor's entire comment, which makes it clear that this was not an improper "civic duty" argument:

> I'm going to ask you, Ladies and Gentlemen, not to go back into the jury room and throw up your arms and say we have two different stories here, that's reasonable doubt. As jurors, again, you are the fact finders in this case. Please do not do that. Determine who you believe. If you don't believe [the victim], if you believe she came in here to court and made all this up, then find the defendant not guilty. But if you believe her, find him guilty. Because a verdict of not guilty means you don't believe her, you believe she came to court and made this all up.

By this statement, the prosecutor was not asking the jury to decide the case based on anything other than defendant's guilt or innocence. In fact, the prosecutor implored the jury to do exactly what it should do: evaluate the evidence, determine who was credible, and render an appropriate verdict. Moreover, the prosecutor's statement was not one of law, but rather one reasonably construing the evidence presented at trial. The trial court properly instructed the jury on the law, and the prosecutor's argument did not infringe on those instructions. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Defendant's claim of prosecutorial misconduct and his related claim of ineffective assistance of counsel are without merit.

D.     Limits on Cross-Examination

Defendant next argues that the trial court erred by limiting defense counsel's attempts at cross-examining Schulte regarding her role in an unrelated custody dispute. "The scope of cross-examination is within the discretion of the trial court," *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992), and is reviewed for an abuse of discretion, *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015).

Schulte testified that, when the victim's mother brought the victim for her first appointment, the reported problems were anxiety and depression. Schulte used an intake form at the first appointment, and one question on the form concerned any history of sexual abuse. Schulte asked the victim this question, and the victim explained that she had been sexually abused. Schulte testified that the victim was "very upset, tearful, shaky." Schulte brought the victim's mother back to Schulte's office, and the victim again explained what happened. Schulte testified that she was a mandatory reporter under the law, and she had to report the allegation of abuse to DHHS. Schulte did not testify to any specific statements made by the victim or to any opinion regarding whether the allegations were credible.

Soon after defense counsel began cross-examining Schulte, defense counsel brought up the case of *Bielaska v Orley*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 1996 (Docket Nos. 173666, 174949, 175287, 175388) ("*Bielaska I*") and *Bielaska v Orley*, unpublished per curiam of the Court of Appeals, issued February 9, 2001 (Docket Nos. 215286, 215287) ("*Bielaska II*"). *Bielaska I*, unpub op at 16-18, was a custody dispute in which Schulte gave an expert opinion that the children at issue truthfully revealed that they were sexually abused by the plaintiff-father. This Court ultimately concluded that Schulte's opinion was not credible because the defendant-mother had hand-picked Schulte and not disclosed many

relevant facts to her. *Bielaska I*, unpub op at 33-35. *Bielaska II*, unpub op at 1, was a civil suit in which the plaintiff-father and his wife sued Schulte, among others, for damages stemming from the allegations that he had sexually abused the children. This Court concluded that Schulte was immune from civil liability as a previous trial witness. *Bielaska II*, unpub op at 3-7. Schulte's testimony in *Bielaska I* ultimately became part of the book by Dr. Campbell mentioned earlier.

Defense counsel questioned Schulte's credibility given *Bielaska I*. The prosecutor objected on relevancy grounds, explaining that Schulte was testifying as a fact witness, not as an expert witness as she had in *Bielaska I*. The trial court sustained the objection. Defense counsel then asked if Schulte was the subject of a book related to the *Bielaska* cases. The prosecutor again objected, and despite defense counsel's argument that the testimony was relevant to Schulte's credibility, the trial court sustained the objection.

Defense counsel then asked if Schulte's testimony in *Bielaska I* concerned a father lying in bed with his daughter and touching her inappropriately. Schulte explained that this was "not correct." When defense counsel again referred to this Court's opinion in *Bielaska I*, the prosecutor objected on relevancy grounds, and the trial court sustained the objection. Defense counsel then began to ask, "You were ultimately sued for your testimony in that case," which drew another sustained objection from the prosecutor. Over the prosecutor's objection, however, defense counsel was permitted to ask Schulte if she was "the subject of a book about people who testify in matters where there's a false allegation." Schulte denied that she was the subject of an entire book, but said that she was the topic of one chapter.

On redirect, the prosecutor asked Schulte to explain to what defense counsel was referring. Schulte stated, "Well, people can write anything about anyone. That doesn't make it true." Schulte explained that a book was written about herself and another witness in the *Bielaska* case. Schulte stated that "that case went all the way to the Court of Appeals and was found not to be valid. So we were exonerated."

On re-cross, defense counsel asked Schulte if she had been "exonerated," and referred to this Court's decision in *Bielaska I*. Schulte explained that defense counsel was talking about a different case. Schulte explained:

> Well, you're talking about two different cases. You're mixing apples and oranges. You're talking about the civil case and you're talking about the Court of Appeals case that was in the book. So you're—you're—This is a very complex situation, and you're talking about two different things. . . . And to ask me a very simple question in relation to a very complex situation is non-accurate.

After more discussions between the trial court, the prosecutor, and Schulte, defense counsel clarified that he was asking about the civil matter in which Schulte was sued. Counsel asked if the matter was dismissed because Schulte was determined to be immune from suit; Schulte maintained that she "was exonerated." Defense counsel made one last attempt to ask Schulte to confirm that one allegation in that case concerned "a father laying [sic] next to his daughter and touching" her inappropriately, which again drew a sustained objection from the prosecutor.

On appeal, defendant argues that the trial court's limitations on cross-examination denied him the opportunity to explore Schulte's credibility. "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993) (internal citation and notation omitted). The right to cross examination is not without limit, however, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (internal citation and notation omitted). "Cross-examination may be denied with respect to collateral matters bearing only on general credibility, as well as on irrelevant issues." *Canter*, 197 Mich App at 564 (internal citations omitted). Still, defendants must be "guaranteed a reasonable opportunity to test the truth of the witness's testimony." *Adamski*, 198 Mich app at 138.

Defense counsel was entitled to attempt to impeach Schulte's testimony with regard to her version of those facts. But counsel's questions regarding the *Bielaska* matter had nothing to do with whether Schulte's recall of those facts was accurate. Indeed, the *Bielaska* cases concerned Schulte's expert opinion and misinformation that had been given to Schulte by the children's mother. In this case, Schulte did not give an expert opinion but simply testified regarding what occurred during Schulte's appointment with the child and Schulte's subsequent report to DHHS. Thus, *Bielaska I* and *II* were largely irrelevant to the matters at hand. Having reviewed the record, we find that the trial court properly struck a balance between allowing testimony impacting Schulte's general credibility and preventing confusion of the issues. *Canter*, 197 Mich App at 564. Accordingly, we find no error requiring reversal.

E.    Defendant's Fifth Amendment Right to Silence

Defendant also argues that the prosecutor violated his Fifth Amendment right to remain silent by using evidence of his silence and invocation of the right to counsel during his police interview as substantive evidence of guilt and that his counsel was ineffective for failing to object. As noted above, when confronted by the detective with the allegations against him, defendant refused to speak on the matter and stated that he needed to contact an attorney. The prosecutor argued that defendant's actions were inconsistent with that of an innocent person.

There is no question that a defendant's "post-arrest, post-*Miranda*[5] silence may not be used substantively or for impeachment purposes." *People v Shafier*, 483 Mich 205, 214; 768 NW2d 305 (2009) (internal citation and notation omitted). But this case does not concern a defendant who was under arrest or one who was given *Miranda* warnings. Rather, defendant voluntarily chose to speak with Detective Shuler. No one disputes that, during the entire interview, defendant was not under arrest, not in police custody, and not given *Miranda* warnings. A defendant's silence or unresponsive conduct is not constitutionally protected where it does not occur during a custodial interview or in reliance on *Miranda* warnings. *People v Schollaert*, 194 Mich App 158, 166-167; 486 NW2d 312 (1992). Accordingly, there can be no

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

constitutional violation here. Given that there is no constitutional error, defense counsel had no valid objection to make and cannot be deemed ineffective. *Sabin*, 242 Mich App at 660.

F.      Cumulative Error

Finally, defendant argues that the cumulative effect of various errors warrants a new trial. As explained throughout this opinion, however, defendant has failed to show any instances where trial counsel was ineffective or the trial court erred. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106.

Affirmed.


                                        /s/ Brock A. Swartzle
                                        /s/ Mark T. Boonstra