*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLOUS SKIPPER, JR.,

        Defendant-Appellant.

UNPUBLISHED
June 24, 2026
1:37 PM

No. 374922
Wayne Circuit Court
LC No. 21-007076-01-FC

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for which he was sentenced to 17 to 40 years in prison for the former and two consecutive years in prison for the latter.[1] In his principal brief on appeal, defendant argues that his convictions should be reversed because the prosecutor committed error during his opening statement and rebuttal through certain prejudicial comments. Further, in his Standard 4 brief and supplement thereto, defendant raises several other arguments. We affirm.

## I. FACTS

In the early morning hours of January 14, 2021, an Uber driver was shot and killed in Detroit, and defendant was charged with his murder. Upon the prosecutor's pre-trial motion, the trial court entered an order allowing Dr. Tom Shazer to conduct a forensic psychiatric examination of defendant "as it relates to the issue of criminal responsibility." Dr. Shazer opined that defendant was not suffering from a mental illness at the time of the offense.[2] However, Drs. Ann Zaborney

---

[1] To be precise, the jury found defendant guilty but mentally ill of second-degree murder and guilty of felony-firearm.

[2] "Legal insanity is an affirmative defense requiring proof that, as a result of mental illness . . . the defendant lacked 'substantial capacity either to appreciate the nature and quality or the

-1-

and Gerald Shiener also evaluated defendant and opined otherwise. Thus, the central issue at trial involved his insanity defense.

At trial, the prosecutor introduced extensive evidence regarding the underlying facts of the murder. Briefly stated, Detective Jelani Dew testified that the police responded to the scene of a vehicle crash on the night in question and initially investigated it as an accident until an autopsy revealed that the driver had been shot, with the medical examiner explaining that the victim suffered two gunshots to the head. Detective Dew testified that he reviewed Uber records as part of the murder investigation, which led him to a pawn shop on Eight Mile Road where he discovered that defendant had recently purchased a Beretta 9mm firearm. Detective Eugene Fielder testified that he arrested defendant a couple of months after the murder and recovered a firearm from him, and forensic scientist Shelby Szymoniak determined it was the gun that discharged a 9mm shell casing that apparently was used in, or otherwise connected with, the murder.[3]

Detective Brad Comer testified that Uber records connected defendant to the murder; that surveillance video recordings from a church nearby the murder scene apparently showed defendant walking in that vicinity around the time of the murder; that he assisted with executing a search warrant at defendant's home, which uncovered 9mm ammunition and "a gun box for the gun that was purchased at the pawn shop." Detective Comer also testified that he interviewed defendant on March 8, 2021, during which defendant repeatedly indicated that he used Lyft around the time of the murder. However, according to Detective Comer's subsequent review of Lyft records, "there's no rides taken on the platform of this user it says from 1-13-2021 to 1-15-2021 for all three accounts."

Defense counsel objected to admission of evidence and testimony concerning the Lyft records, stating that he never received the Lyft records in discovery. The trial court agreed with defense counsel, concluding that a "*Brady*[4] violation has occurred" and that the remedy is "to exclude the LYFT record response and to ask the jury to disregard any discussions or questioning

wrongfulness of his or her conduct or [to] conform his or her conduct to the requirements of the law.' " *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001), quoting MCL 768.21a(1) (alteration added). "Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." MCL 768.21a.

A verdict of "guilty but mentally ill," in contrast, includes a finding that "[t]he defendant has proven by a preponderance of the evidence that he or she was mentally ill at the time of the commission of that offense" but "[t]he defendant has not established by a preponderance of the evidence that he or she lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.36(1)(b)-(c). Essentially, a verdict of guilty but mentally ill imposes a requirement on the state to provide psychiatric treatment during the otherwise-normal term of incarceration. See MCL 768.36(3).

[3] Specifically, a shell casing that was found in the victim's car was determined to have been fired from the firearm purchased and possessed by defendant at the time of his arrest.

[4] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

in relation to LYFT records that occurred . . . ."[5]  Thus, the trial court instructed the jury to "disregard the issue of whether or not a LYFT was used on the date in question by the Defendant."[6]

Dr. Zaborney, a forensic psychologist for the Center for Forensic Psychiatry, testified that she met with defendant on a few occasions to assess his competency to stand trial and his "criminal responsibility" pursuant to a court order for those evaluations.[7]  Dr. Zaborney opined that defendant was competent to stand trial because he could assist with his defense but that "at the time of the offense was legally insane, met the statutory criteria for that and was not criminally responsible."  Dr. Zaborney testified about her opinion at length, including defendant's description of the shooting to her:

> I ask him what -- does the driver say anything to you, and he says the driver says, are you ready -- I believe it's, are you ready to die, and then he hears a voice in his head that says, shoot him, shoot him.  He believes his life is in danger.  He pulls out a gun and shoots the driver which he sees as a demon.

Dr. Shiener, a psychiatrist hired by the defense, similarly opined that defendant had a "psychiatric illness" that "rose to the level of legal insanity."[8]  However, Dr. Shazer, the prosecutor's rebuttal witness, opined that defendant "does not suffer from any chronic mental disorder which would have made him mentally ill at the time of the offense."  Dr. Shazer added

---

[5] We question whether the prosecutor's failure to timely deliver the Lyft records constituted a *Brady* violation, as those records tended to show that defendant lied to the police about using Lyft, which would render those records inculpatory, not exculpatory.  See *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (explaining that *Brady* applies to evidence "that is favorable to the accused").  Nonetheless, excluding the Lyft records likely was within the trial court's discretion to impose as a remedy for a discovery violation.  See *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).  In any event, the point is moot because the jury found defendant guilty without the records being admitted into evidence.

[6] Following Detective Comer's testimony and the conclusion of the prosecutor's case, defendant moved for a directed verdict on the first-degree murder charge, arguing that the prosecutor failed to show deliberation or premeditation.  The trial court agreed and reduced that charge to second-degree murder, consistent with the prosecutor's request to add that reduced charge to the information.

[7] See MCL 768.20a(2) ("Upon receipt of a notice of an intention to assert the defense of insanity, a court shall order the defendant to undergo an examination relating to his or her claim of insanity by personnel of the center for forensic psychiatry or by other qualified personnel, as applicable, for a period not to exceed 60 days from the date of the order.").

[8] Dr. Shiener briefly testified that he "was asked to perform a consultation and in this instance the consultation referral request was to determine [defendant's] state of mind . . . ."  The initial terms of his consultation were never detailed, but defense counsel represented during a pre-trial hearing that "Dr. Shiner [sic] is the hired independent that we're using."

that defendant "doesn't have any mental disorder of which hallucinations or delusions are symptomatic . . . ."

As noted, the jury found defendant guilty but mentally ill of second-degree murder and guilty of the accompanying felony-firearm charge. Defendant now appeals, arguing in his principal brief that the prosecutor erred in five respects during his opening statement and rebuttal. Defendant himself, in his Standard 4 brief and supplement, raises additional arguments.

## II. BRIEF ON APPEAL

Defendant first argues that the prosecutor made a prejudicial comment during his opening statement and four prejudicial comments during his rebuttal which, considered individually or collectively, require a new trial. Relatedly, defendant argues that defense counsel's failure to object to most of these comments constituted ineffective assistance. We disagree with these arguments.

## A. STANDARD OF REVIEW

"In order to preserve an issue of prosecutorial [error], a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Issues of prosecutorial [error] are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *Id*. However, "[u]npreserved issues are reviewed for plain error affecting substantial rights." *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted). "When the reviewing court is left with a definite and firm conviction that the trial court made a mistake, there is clear error." *Id*. (quotation marks and citation omitted). However, because the trial court did not conduct a *Ginther* hearing,[9] our review is limited to mistakes apparent on the record. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). "This right guarantees the effective assistance of counsel." *Id*. "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance,

---

[9] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

there is a reasonable probability that that outcome would have been different." *Id*. (quotation marks and citation omitted).

## B. DISCUSSION

Prejudicial comments by a prosecutor may result in a denial of due process. See *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Id*. "A prosecutor may not argue facts material to the case which are not in evidence." *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988). "A prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008) (internal citations omitted). Further, the prosecutor may not disparage the defendant's expert witnesses. See *People v Tyson*, 423 Mich 357, 375; 377 NW2d 738 (1985) ("[I]nvective, ridicule, injection of his belief, and innuendoes was not permissible argument, and was unfair to the experts and prejudicial to defendant.") (quotation marks and citations omitted).

"[T]he prosecutor is permitted, as an advocate, to make fair comments on the evidence, including arguing the credibility of witnesses to the jury when there is conflicting testimony and the question of defendant's guilt or innocence turns on which witness is believed." *People v Flanagan*, 129 Mich App 786, 796; 342 NW2d 609 (1983) (citations omitted). "However, in every case, the remarks of the prosecutor must be viewed with reference to the prosecutor's duty of fairness." *Id*.

Here, defendant challenges four comments from the prosecutor's rebuttal and one excerpt from the prosecutor's opening statement, each of which will be quoted below with additional context when appropriate.[10] The comment from opening statement is as follows:

> I believe all the elements will be met and satisfied and there will not be an excuse or justification for why he shot and murdered an Uber driver. The devil made me do it. I know you've all heard it. It's a fairly common phrase. It's not that simple. You don't just get to say, the devil made me do it, and shoot somebody to death.
>
> Now, this case -- the facts of this case aren't exactly, the devil made me do it. It's slightly different than that. Mr. Skipper believes that he shot a demon.

---

[10] The only time that defense counsel objected to any of these comments was in response to the first challenged comment of the prosecutor's rebuttal. Thus, while the challenge to that comment is preserved, the remaining four challenges are unpreserved. See *Bennett*, 290 Mich App at 475. However, as noted, defendant raises the parallel argument that defense counsel's failure to object constituted ineffective assistance.

-5-

Mental health, it's a serious issue. It's very prominent today in the news. You see it all the time. It's not -- it needs to be taken serious and I know you all take it serious and that's the right thing to do. It is not a free pass for murder.

* * *

That's the legal question that you'll be asked to determine at the end. Basically the question for you will be, did that mental illness make him do it and the answer should be no because it was a lie. I'm sympathetic to people with mental illness. Many people are. I'm sympathetic to this particular Defendant because of his history of mental illness, but it's not an excuse. It's not a justification.

In this case what it is, is it's a crutch and it's his last resort after all the other lies failed, it's a last resort to get out of trouble. Typically I would do some power points and go through each of the elements of each charge and explain them to you. . . .

We disagree with defendant that the prosecutor unfairly ridiculed or mocked his insanity defense. Rather, the prosecutor acknowledged that mental health is a "serious issue." Further, given that defendant told Dr. Zaborney that a voice in his head told him to shoot the victim, who he perceived as a demon, it was reasonable for the prosecutor to analogize this case to the stereotypical phrase of "the devil made me do it." And, given that there was some evidence introduced at trial to indicate that defendant was sane and that he tried to evade criminal responsibility for the shooting by lying to the investigators, it was reasonable for the prosecutor to suggest that defendant was using his documented mental-health issues as a mere excuse to avoid responsibility. In other words, the prosecutor asserted that in light of the facts of the case, the insanity defense was not appropriate to apply to defendant. Moreover, there is no language in the challenged comment that strikes us as particularly concerning or emotionally charged. Thus, the challenged comment here was not erroneous, and defense counsel cannot be deemed ineffective for failure to raise a meritless objection. See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

The first comment from rebuttal is as follows:

When you look at the elements I believe there's plenty of evidence to find him guilty of second degree murder and I'm not going to beat that to death, but whether or not he was mentally ill at the time of the crime I think is the real issue in this case, okay.

I don't believe that you get to whether or not he was insane at the time, whether or not he was having delusions or hallucinations cause I believe Doctor Shazer is correct when he asserts that he would need to have mental illness at the time, January 14th, 2021 and so you should not find him not guilty by reason of insanity. At the very minimum he should be guilty but mentally ill.

According to defendant, the above quote was erroneous because "[t]he prosecutor urged the jurors to determine whether Mr. Skipper was mentally ill," which violates the principle that "it is not permissible for a prosecutor to specifically invite a jury to compromise between a verdict of

-6-

guilty and not guilty by reason of insanity by picking the middle ground of guilty but mentally ill. The jury must be asked to first determine whether there is mental illness and then to make a determination of whether the mental illness has ripened into insanity." *People v Wallace*, 160 Mich App 1, 11; 408 NW2d 87 (1987). In other words, defendant asserts, "[t]his was a plea by the prosecutor to nullify the insanity defense." We disagree. The prosecutor simply noted, very reasonably, that the evidence showing that defendant actually committed the shooting at issue was overwhelming and not subject to significant dispute, and that the debatable question before the jury was the insanity defense. Next, the prosecutor contended that defendant did not suffer mental illness, as Dr. Shazer opined, such that it was unnecessary for the jury to assess whether defendant satisfied the remaining elements of the insanity defense. See *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001). This was not erroneous. Rather, it was an accurate representation of the law. *Id.* The prosecutor's reference to "[a]t the very minimum he should be guilty but mentally ill," when considered in context, was not an invitation for some type of jury compromise or nullification of the insanity defense. Rather, it was an implicit acknowledgment by the prosecutor that defendant did have a documented history of mental-health issues from before the shooting, as well as significant evidence on that matter from after the shooting, such that a verdict of guilty but mentally ill would be appropriate. Such an acknowledgement does not run afoul of the general principle that the prosecutor cannot invite an improper jury compromise or nullification of the insanity defense. See *Wallace*, 160 Mich App at 11. Thus, no error occurred.

The second comment from rebuttal is as follows:

> The Defendant lies about -- first of all, about being there. I wasn't there. I was home that night. I stayed at my friend's house. Second lie, ah, yeah, I think that I did go somewhere. *I don't use Uber, but I use LYFT.*
>
> * * *
>
> The documents show -- the Uber records show that he had an iPhone 11 on the day of the shooting. What was taken from him when he was arrested was an iPhone 12 Max. He's getting rid of the evidence along the way, along this two month period, or whatever it was, until he's arrested. [Emphasis added.]

According to defendant, the italicized reference to Lyft was erroneous because the prosecutor reminded the jury that "Mr. Skipper lied about having taken a Lyft during his interrogation, despite the Court's having stricken the exhibit containing Lyft records and had instructed the jury to disregard the testimony about Lyft, based on a discovery violation." We disagree that error occurred but, even if this reference was erroneous, it did not amount to plain error. The prosecutor asserted that defendant lied when he essentially said, "I don't use Uber, but I use LYFT." The lie that was being highlighted by the prosecutor here was not defendant's contention that he used Lyft but, rather, his contention that he did not use Uber. This is illustrated by the fact that the prosecutor referenced the Uber records showing that defendant used Uber and did not reference the Lyft records. Thus, while the prosecutor theoretically could have ended the italicized sentence without stating, "but I use LYFT," any error in this regard was minimal and did not rise to the level of being clear or obvious. See *Carines*, 460 Mich at 763. Further, given that the reference to Lyft in closing argument was minimal and not reinforced by, for example, discussion of the excluded Lyft records, we cannot conclude that any plain error was prejudicial.

See *id*. This is particularly true in light of the fact that defendant's identity as the shooter was not heavily disputed at trial. Thus, even if defense counsel had successfully objected, there is no reasonable probability that a different outcome would have resulted. See *Yeager*, 511 Mich at 488.

The third challenged comment from rebuttal is as follows:

> Now, Doctor Zaborney -- again, I have no problem with her testimony. I don't think she's lying. I don't think she's trying to be deceitful like Mr. Jaffe claims that I might accuse her of, but I believe that she got fooled and I believe that she wasn't provided with all the necessary documents and so when she did her evaluation she had, you know, all the historical stuff and she talked to the Defendant, right.
>
> She didn't watch the police interview and she didn't know a lot of the key facts, like the Defendant walked right up to the window and shot Mr. Al-Gabri right in the face, once on the side of the nose, once in the head.
>
> He left a shell casing in the vehicle, close enough for stippling on his face and the shell casing on the floor, but he didn't tell Doctor Zaborney any of that during the interview. It was all about taking out the trash, doing this and that and, by the way, mom doesn't remember anything about the trash can either.

The fourth comment, which is related to the third and followed shortly thereafter, is as follows:

> I'll tie it up in a second, but Doctor Zaborney was just tricked. She didn't know about the shell casing and she was fooled by the Defendant. She was fooled to think that he was being honest. There's no evidence, though. She didn't follow-up with questions to challenge him or anything like that. Just asked follow-up questions.
>
> See if he can explain things a little bit better. Why do you say that you were in your driveway with trash cans and you froze because you were so scared when the shooting happened on the street four houses down at the intersection? Never asked that.
>
> Look at the evidence clear [sic?]. Doctor Zaborney did not have all the information that she needed to make the assessment that she knew at the time he was not mentally ill. The specific lies. I know there's a lot of lies. When you watch the police interrogation there's a lot of lies that are very, very specific lies and this let's into the Defendant's head throughout all of this.

Defendant suggests that these two comments constituted "unfounded personal attacks on and ridicule of [his] expert witness . . . ." We disagree. The prosecutor introduced his comments about Dr. Zaborney by stating that he had "no problem with her testimony" and that he did not believe that she was "lying" or "trying to be deceitful." In other words, the prosecutor indicated that he did not believe that Dr. Zaborney testified or otherwise acted in bad faith. Rather, considered in context, the prosecutor's comments about Dr. Zaborney being "fooled" and "tricked" were references to defendant misleading, if not outright lying to, Dr. Zaborney during her

evaluation of him. For example, defendant apparently told Dr. Zaborney inconsistent versions of when he first began hearing voices, with one timeframe being characterized by Dr. Zaborney as "very unusual" in her field. Further, while the prosecutor attempted to cast doubt upon the credibility of Dr. Zaborney's opinion by suggesting that she did not ask sufficient follow-up questions of defendant when evaluating him, the prosecutor's comments were appropriate to question her credibility and did not cross the line into unfair personal attacks. See *Tyson*, 423 Mich at 375. That is, the prosecutor did not call into doubt Dr. Zaborney's qualifications, intelligence, or good-faith conduct as it relates to this case. Thus, no error occurred, and any objection by defense counsel would have been meritless. See *Heft*, 299 Mich App at 83.

In summary, four of the five challenged comments were not erroneous, and only the second challenged comment of rebuttal, in which the prosecutor briefly suggested that defendant lied about using Lyft, can arguably be called erroneous. However, that comment was brief, did not rise to the level of plain error, and any objection by defense counsel could not have created any reasonable probability of a different outcome of trial. Therefore, defendant is not entitled to relief for his claim of prosecutorial error.

## III. STANDARD 4 BRIEF

In his Standard 4 brief, raises several arguments, none of which has merit. Defendant argues that he received the ineffective assistance of counsel in two respects. First, defense counsel failed to move for a mistrial after one prospective juror in the jury panel said that "my cousin, my son's Godfather, they got into a altercation and he got let off for mental insanity cause he does have this and then my son's Godfather is no longer with us," and another prospective juror, when generally asked about the case, said that "just the whole idea about premeditated without mental issues, but somebody with mental issues, you know, this person can be found guilty. This person did it still with a mental issue. I mean, is there some resource of the victim?" Defendant reasons that these two comments tainted the entire jury pool. Next, defense counsel failed to object during the prosecutor's rebuttal when the prosecutor told the jury that defendant "went right to where he told the Uber to meet him at," and when the prosecutor told the jury that defendant replaced his iPhone 11 with an iPhone 12 after the shooting in an apparent attempt to conceal evidence. According to defendant, both of these statements were unsupported by the evidence.

Defendant also argues that the prosecutor committed error by "contradict[ing] the evidence to spread false and misleading information not to seek justice but just another conviction," and violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose the video recording from a residence near the shooting. Defendant asserts that "I seen the said video after trial which not only does it not showcase any vehicle driving down the street, you don't see any gun flash which proves the shooting didn't happen where detectives said it happened."

With regard to the comments by the prospective jurors, a defendant has "the right to be tried by an impartial jury," and when a defendant raises an argument on appeal that "the process did not result in an impartial jury, [the] defendant has the burden to show that a particular juror was not impartial or, at the very least, that the juror's impartiality was in reasonable doubt." *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). Such a claim is preserved for appeal by requesting a mistrial or a new jury panel. See *id*. As defendant correctly observes, his defense counsel did not do so.

The Ohio Supreme Court has explained that it "will not presume that a venire is tainted when a prospective juror makes improper comments during voir dire." *State v Worley*, 164 Ohio St 3d 589, 609; 174 NE3d 754 (2021). "The party challenging the entire jury panel has the burden to show either that the jurors were unlawfully impaneled or that the jurors could not be fair and impartial." *Id*. (quotation marks and citation omitted). In other words, when a jury panel is exposed to potentially prejudicial comments by a prospective juror, the question is whether "the exposure was so prejudicial as to be unsusceptible to neutralizing by an admonition to the jury." *Mariscal-Ochoa v State*, 550 P3d 813, 819 (Nev, 2024) (quotation marks and citation omitted).

Here, we first note that both of the prospective jurors identified by defendant were excused and, therefore, did not serve on the jury itself.[11] Moreover, there is nothing unusual about the comments at issue to suggest that the entire jury panel was tainted by them. The first comment, which involves the prospective juror's cousin, seems to suggest that the prospective juror believes that the insanity defense allows a criminal defendant to be "let off" from responsibility for his or her crime. However, the comment was brief and does not strike us as out of the ordinary for a voir dire involving the insanity defense. Further, the comment did not cast doubt on the insanity defense in this case in particular, nor did it assume or imply that defendant himself was guilty. The second comment is ambiguous and simply inquires, "I mean, is there some resource of the victim?" We cannot discern any significant prejudice from this comment, as it is more of a philosophical observation about the balance between moral culpability and punishment, as opposed to a diminishment of the insanity defense itself.

Simply put, the two comments identified by defendant on appeal were not prejudicial. Indeed, the purpose of voir dire in a case such as this one is to identify those prospective jurors who might have a bias against the insanity defense so that they may be excused, thereby ensuring the defendant a fair and impartial jury. See *Haynes*, 338 Mich App at 411. Therefore, any motion by defense counsel for a mistrial or to have the entire jury panel excused would have been meritless, and counsel cannot be deemed ineffective for failure to raise a meritless motion. See *Heft*, 299 Mich App at 83.

With regard to the prosecutor's rebuttal, we simply note that the prosecutor's comments were fully supported by the evidence. See *Dobek*, 274 Mich App at 66. Detective Comer testified that, according to Uber records, the victim's pick-up location was "near 16232 Wisconsin . . . almost between that and the next-door neighbor." Moreover, Detective Comer testified that Uber records indicated that defendant used "an iPhone model 11" around the time of the shooting, while Detective Fielder testified that defendant was arrested with an "Apple iPhone 12" in his possession. Thus, the prosecutor's comments about the pick-up location scheduled by defendant and his different cellular phones were consistent with trial testimony.

Finally, defendant argues that the prosecutor violated *Brady* by failing to disclose to his defense a residential camera recording from near the alleged shooting location that apparently does not show a vehicle driving down the street or a gun flash, "which proves the shooting didn't happen

---

[11] The prospective juror who made the first comment was challenged by the prosecutor, and the one who made the second comment was challenged by defense counsel.

where detectives said it happened."[12] We agree with defendant that the prosecutor had a duty to disclose exculpatory evidence possessed by the police. See *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). However, defendant provides no factual support for his assertion about the recording, such as the recording itself, so he has failed to sustain his burden of showing a *Brady* violation. See *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007). Regardless, we note that the trial testimony overwhelmingly indicated that the victim was shot near the pick-up location identified by defendant and crashed his car immediately afterwards, and it is almost inconceivable that the victim's body or his car, or both, were secretly moved from the actual shooting location. Thus, we doubt that the recording discussed by defendant had exculpatory value. See *Chenault*, 495 Mich at 150.

## IV. STANDARD 4 BRIEF SUPPLEMENT

In his Standard 4 brief supplement, defendant argues that he received the ineffective assistance of counsel in the following respects: (1) defense counsel failed to properly cross-examine the medical examiner about the caliber of firearm that was used in the shooting; (2) defense counsel failed to move to exclude the shell casing found in the victim's car that was apparently used in the shooting and, relatedly, failed to properly question police witnesses about finding that shell casing; and (3) defense counsel failed to properly cross-examine Detective Comer about such matters as the church surveillance video and firearm ballistics. Defendant also argues that the trial judge pierced the veil of judicial impartiality by (1) allowing Szymoniak to testify that the shell casing found in the victim's car was discharged from the firearm possessed by defendant when he was arrested despite the fact that her report was insufficient; (2) allowing the case to proceed beyond the directed-verdict stage; (3) failing to recognize that the arrest and search warrants in this case included false information. We disagree with these arguments.

With regard to the ineffective-assistance claim, the three specific arguments raised by defendant concern the identity of the shooter. In other words, defendant asserts that defense counsel was ineffective for failure to challenge some of the circumstantial evidence indicating that he was the shooter. However, defense counsel's trial strategy was to essentially concede that defendant was the shooter but argue that defendant should not be criminally liable on the basis of insanity. Given that the totality of the evidence easily established that defendant was the shooter, defense counsel's trial strategy was eminently reasonable. See *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).[13] Thus, we cannot fault defense counsel for

---

[12] Defendant additionally suggests that the prosecutor otherwise "spread false and misleading information" but does not identify a specific example of the prosecutor doing so. Thus, we deem this argument abandoned. See *People v Johnson*, 340 Mich App 531, 550-551; 986 NW2d 672 (2022).

[13] We acknowledge the possibility that defense counsel's entire trial strategy could have been flawed if, as defendant argues, defense counsel should have instead contended that defendant was not the shooter. However, the challenges raised by defendant here either distort the record or are ancillary to the fundamental question of his identity as the shooter. For example, defendant states that "[m]y attorney never questioned Dr. Sung [the medical examiner] about what caliber weapon

failure to challenge some of the circumstantial evidence indicating that defendant was the shooter, and relief is not warranted for this claim.[14]

With regard to the judicial-impartiality claim, "[a] trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality," and "[a] judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). Here, however, none of the arguments raised by defendant actually suggest the possibility that the jury was tainted by the appearance of advocacy or partiality by the trial judge. Nor does the record otherwise suggest any type of judicial basis. Rather, defendant raises underlying claims of legal error in these proceedings, which we will nonetheless address notwithstanding his failure to adequately brief them.

As to allowing Szymoniak to testify about the 9mm shell casing, while not entirely clear from defendant's argument, he appears to be concerned with the fact that Szymoniak concluded that the shell casing found in the victim's car was discharged from the firearm recovered from defendant when he was arrested, notwithstanding that Szymoniak testified that she did not include all of the exact microscopic similarities in her final written report. The implication by defendant is that Szymoniak's testimony should have been excluded for this reason, possibly because it violated MRE 702 or 703, or both. However, Szymoniak testified that she recorded the microscopic similarities in her "work sheet through either verbal or written notes or through photographs." Defendant has not cited any authority to suggest that an expert such as Szymoniak cannot testify about the link between a shell casing and a firearm unless the entirety of his or her informal verbal and written notes are introduced as evidence at trial. While there might be a constitutional or evidentiary issue if Szymoniak had relied upon the verbal or written notes of another person in reaching her conclusion, see *People v Lonsby*, 268 Mich App 375, 388-389; 707 NW2d 610 (2005), no such concerns are present here. Thus, relief is not warranted for this issue.

With regard to the trial court's purported failure to grant defendant a directed verdict, "[w]e review the record de novo," and "[c]onsidering all the evidence presented by the prosecution in

---

was used in the shooting, this is important because lead detective, Brad Comer said in the probable cause paperwork that a 9mm was used in the shooting, when Dr. Sung never mentioned what caliber was used in his report." But, such hypothetical testimony about firearm ballistics would not have been appropriate from the medical examiner, as there is nothing to suggest that he was qualified to testify about such matters. Moreover, the medical examiner explained that both bullets had "exit wound[s]," which suggests that he did not recover any bullets whatsoever. Thus, it is difficult for us to discern how the medical examiner could have opined about the caliber of bullets used in the shooting.

[14] We briefly note, however, that defense counsel cross-examined the prosecution witnesses, often at length, regarding such matters as memory reliability. Thus, defense counsel did test the prosecutor's case concerning defendant's identity as the shooter. He also made successful motions during this trial in an attempt to contest defendant's identity as the shooter, such as arguing that the Lyft records should be excluded.

-12-

the light most favorable to the prosecution, a directed verdict is inappropriate where a rational trier of fact could find that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). We first note that the trial court granted defense counsel's motion at the conclusion of the prosecutor's case to dismiss the charge of first-degree murder, as the prosecutor failed to sufficiently show premeditation and deliberation. See MCL 750.316(1)(a). To the extent that defendant is arguing in his Standard 4 brief supplement that the trial court should have sua sponte dismissed the entire case, we disagree. The evidence establishing that defendant was the shooter is fairly characterized as overwhelming, given that Uber records indicated that defendant was responsible for ordering the Uber drive before the shooting and that defendant was arrested with the murder weapon in his possession, as well as other circumstantial evidence that we need not recite here. Thus, the trial court properly allowed the jury to decide whether defendant committed the shooting. See *id*. Moreover, given that there was disagreement between the expert witnesses regarding defendant's sanity at the time of the offense, the trial court properly allowed this question to proceed to the jury as well. *Id*. Thus, no error occurred with regard to the trial court's failure to sua sponte grant a directed verdict of the entire case.

Finally, defendant is not entitled to relief for the trial court's alleged failure to recognize that the arrest and search warrants in this case included false information. First, defendant has not provided us with copies of those warrants or identified where that material may be located in the lower-court record, as the record that has been transmitted to us does not appear to include that material. Thus, defendant has failed to sustain his burden of establishing the factual basis for his claim. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Second, the factual discrepancies identified by defendant in his Standard 4 brief supplement do not suggest that the affiant(s) "knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause." *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992). For example, defendant represents that according to the "probable cause paperwork" drafted by Detective Comer, "on January 24, 2021 Fitzhugh found the 9mm shell casing yet at trial when questioned by the prosecutor Fitzhugh testified to finding the shell casing on January 19, 2021[.]" However, assuming that defendant is correct that one or both of the warrants misstated the date of discovering the shell casing as January 24, that misstatement is mundane and does not rise to the level of suggesting the type of malice or materiality necessary for striking the warrant. See *id*. By the same measure, the other discrepancies identified by defendant are incidental as well. For these reasons, defendant is not entitled to relief for this issue.

## V. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica

-13-